[Civ. No. 2789.   Second Appellate District, Division One.—April 28, 1920.]

## H. STOTT, Respondent, v. THE SOUTHERN SIERRAS POWER COMPANY (a Corporation), Appellant.

[1] Negligence—Prima Facie Presumption—Burden of Proof.—The presumption which in certain cases is available to a plaintiff as showing, *prima facie,* negligence on the part of a defendant, is one which in its practicable application results only in shifting the burden of proof, and in cases where the bare circumstances of an occurrence, as to the cause of which negligence is charged, are shown, if the defendant by uncontradicted evidence clearly shows that he has used the degree of care required of him in the circumstances, the plaintiff must fail of recovery.

[2] Id.—Electric Corporations—Degree of Care Required.—Persons engaged in the business of supplying electric current, the agency involved being a dangerous one, are required to use great care to see that injury to others is not caused thereby.

[3] Id.—Exercise of Proper Care—When Question of Law—Case at Bar—Evidence.—The question whether a company engaged in the business of supplying electric current discharged its obligation by properly constructing, installing, and inspecting its power line becomes a matter of law wherever the facts are clearly settled and the course which common prudence dictates can be readily discerned; and in this action for damages suffered by plaintiff because of the burning of certain hay, the fire having been caused by a "short" due to the cracking or puncturing of certain insulators on defendant's power line, the evidence was clear and satisfactory to the point that defendant had used that degree of care required of it in the circumstances.

APPEAL from a judgment of the Superior Court of San Bernardino County.   J. W. Curtis, Judge.   Reversed.

The facts are stated in the opinion of the court.

---

1. Presumption of negligence from accident or injury, notes, 43 Am. Rep. 73; 6 Am. St. Rep. 792; 113 Am. St. Rep. 986.

Applicability of *res ipsa loquitur* doctrine to accidents on private property due to escape of electricity from disordered electrical appliances, notes, 22 L. R. A. (N. S.) 1183; 32 L. R. A. (N. S.) 848.

2.   Duties and liabilities of electric corporations, note, 100 Am. St. Rep. 515.

Issac B. Potter, Newman Jones and Henry W. Coil for Appellant.

McNabb & Hodge for Respondent.

JAMES, J.—Appeal by defendant. Plaintiff was awarded judgment in the sum of five hundred dollars as damages which he alleged he had suffered because of the burning of a lot of hay. The burning of the hay was caused by fire which originated on a pole belonging to the defendant corporation, which pole held wires carrying high voltage of electricity. Fire was communicated from the pole to some dry grass and spread for a distance of perhaps half a mile, finally igniting the hay of the plaintiff. The fire was caused at the pole by a short circuit. Two insulators, which sustained one of the wires, which wire was carrying thirty-three thousand volts of current, broke down, and the current, in its course to the ground and in overcoming the resistance offered by the pole, ignited the top of the latter. The wire did not fall to the ground, but remained suspended. Sparks from the burning pole were blown to the dry grass, with the result first indicated. The record shows no dispute to have been made as to the facts. Plaintiff on his part opened his case by showing the bare facts as to the causing of the fire and the amount of damage done. He called, as one of his witnesses, the superintendent of the defendant company, who testified on direct examination as to the wire construction at the pole which was burned. On cross-examination the witness was asked many questions relative to the care used in guarding against occurrences of the kind complained of; and at the conclusion of plaintiff's evidence a motion for judgment of nonsuit was made by defendant and denied by the court. One of the complaints here is that the court erred in denying this motion, because, as urged, the plaintiff had failed to establish any negligence on the part of the defendant. As the substance of all the evidence is before us and the case presented is one where no actual conflict of testimony appeared, the question as to whether the court erred in its ruling on the motion for nonsuit need not be separately considered. The important point in this appeal is as to whether upon the whole evidence such

a case was presented as authorized the court to make the findings and enter the judgment appealed from.

[1]   Before entering into a more detailed statement of the particular facts shown in evidence, it may be stated that the position of respondent is that, having shown the circumstances attending the burning of the pole and the igniting of the grass and hay, he established, under the *res ipsa loquitur* rule, a *prima facie* case, and that the evidence of the defendant as to the care used in constructing and maintaining the defendant's lines furnished a case which should be considered as one presenting a conflict, and hence one which the trial court had the sole province of determining on the facts. Such is not the law as we understand it. The presumption which in certain cases is available to a plaintiff as showing, *prima facie,* negligence on the part of a defendant is one which in its practical application results only in shifting the burden of proof. "When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care." (Shearman & Redfield on Negligence, 6th ed., sec. 59.)   So in cases where the bare circumstances of an occurrence as to the cause of which negligence is charged are shown, if a defendant by uncontradicted evidence clearly shows that he has used the degree of care required of him in the circumstances, the plaintiff must fail of recovery.   [2]   In the first place, we think that it is now well established that persons engaged in the business of supplying electric current, the agency involved being a dangerous one, are required to use great care to see that injury to others is not caused thereby. (Keasbey on Electric Wires, 2d. ed., sec. 241.)   To say that the care required to be used is proportionate to the dangerous agency being handled is to merely state the requirement in different terms.   [3]   The question we ultimately reach in this case, and the question determinative of this appeal, is as to whether the defendant established by its evidence that it had discharged its obligation by properly constructing, installing, and inspecting its power line.   The question becomes a matter of law wherever the facts are clearly settled and "the course which common

prudence dictates can be readily discerned." (*Van Praag* v. *Gale*, 107 Cal. 438, [40 Pac. 555].) The following cases are also in point: *Davis* v. *California Street Cable Ry. Co.*, 105 Cal. 131, [38 Pac. 647]; *Herbert* v. *Southern Pac. Co.*, 121 Cal. 227, [53 Pac. 651]; *Fernandes* v. *Sacramento City Ry. Co.*, 52 Cal. 45. Conversely stated, the rule is that if, upon uncontroverted facts, reasonable deductions are suggested, both in the affirmative and negative of the question, then the decision of the court or jury must be taken as final. We are of opinion that the evidence in this case was clear and satisfactory to the point that the defendant had used that degree of care required of it in the circumstances, and that the judgment entered was erroneous. It was shown in evidence that the "short" which caused the fire was occasioned by the cracking or puncturing of two insulators mounted in series, one of which was attached to the pole and the other to the end of the current wire. The insulators were called strain insulators, and a loop wire was used to conduct the current over the pole and to the continuing wire on the other side, which was in like manner supported. These two particular insulators had been in use for at least four years. The testimony of the defendant was that they were the best known in the market, "the best that money could buy," and were those commonly and generally used by power companies; that the individual insulator had been tested to carry several times the voltage being conducted in the wires at the time; that a patrolman was employed by the company whose business it was to constantly patrol the power lines, and that he had traversed this line about four days before the "short" occurred; that he had not mounted the pole to inspect the insulators, but observed them from the ground to find whether they had become nicked or the wires loosened; that when any such defects were discovered report was immediately made; that insulators sometimes break down in the manner that the particular insulators here used did, and the current become shorted; that if an insulator cracked, the current would short; that it was impracticable to take down insulators and test them, because the current would have to be shut off from the wires and the business of the company interrupted if such were done; that even though an insulator should be taken off and subjected to a special test, it might crack within thirty seconds

after being replaced upon the pole; that the fact that the particular insulators had remained in service four years would be an indication that they were originally sound and sufficient in insulating properties; that when the "short" occurred which caused the fire the superintendent had almost immediate notice of it by the cessation of power on the line, and that the defect was found and remedied as soon as possible thereafter. The expert witness of the defendant testified that temperature changes would sometimes crack insulators, and that the day on which this "short" occurred was an unusually warm one, the thermometer registering in that vicinity about 117 degrees. The trial court evidently held the view that the law imposed upon the defendant practically the obligation of an insurer, rather than to use great care. In the opinion of the trial judge, which is printed in the record, the judge said: "And the court is of the opinion that in the construction of its pole line the defendant has used the latest improved insulators and all other appliances known to the business in which defendant is engaged. In fact, it appears from the testimony that the defendant has exercised not only due care, but the greatest of care in the construction of its line of poles and wires in the vicinity where the fire occurred." The conclusion indicated by the trial judge is not in accord with modern authority, as will be seen by an examination of the text in Mr. Keasbey's work, above cited; we have already stated the rule in that regard. The evidence, to our minds, clearly establishes without conflict that the defendant had discharged its obligation and exercised the full degree of care required of it.

The judgment is reversed.

Conrey, P. J., and Shaw, J., concurred.