[Sac. No. 3856.  In Bank.—March 20, 1928.]

WILLIAM ANSTEAD, Respondent, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Appellant.

Thomas J. Straub, L. H. Susman, Charles E. Finney, Carr & Kennedy and Chenoweth & Leininger for Appellant.

T. W. H. Shanahan, Carter & Smith and Jesse W. Carter for Respondent.

LANGDON, J.—This is an appeal by defendant from a judgment of the superior court of Shasta County, after verdict by a jury, awarding plaintiff damages in the sum of $15,000 for personal injuries.

The plaintiff was but nine years of age at the time of the accident which resulted in his injuries. He suffered an electric shock and electric burns while in an apple tree on a ranch in Shasta County, which ranch was occupied by his father and family. The plaintiff had climbed the tree to pick apples. Through one side of this apple tree, in a space cleared for the purpose, defendant and its predecessors in interest had for many years maintained an electric power line of two wires, suspended from poles, which power line was used for the distribution of electricity for public use. The ranch upon which the apple tree was situated and which was being occupied by the plaintiff's family, was known as the "Spann ranch." There is a fence along the boundary line between the "Spann" and "Graham" ranches and the wires constituting this fence were nailed on the south side of the poles on which the power wires on this line were strung. The "Spann" ranch was on the south side and the "Graham" ranch on the north side of this fence. A large

apple tree was situated five feet south of the fence on the "Spann" ranch about 200 feet east of the county road which runs north and south and constitutes the western boundary of the "Spann" ranch. This apple tree was 33 feet in height and had a spread northeasterly and southwesterly of 39.7 feet on the north side of the tree. About 14 feet from the ground an opening had been cut in the limbs and the wires of this high tension line were suspended from the poles so that the same passed through this opening. The poles from which these wires were suspended were one hundred and seventy-two feet apart. The average vertical opening between the limbs which had been cut out of the tree was between four and five feet in height. The wires of this power line were suspended nine feet inside the spread of the tree. The tree forks near the ground and the lowest limbs and branches projecting from the tree were only about two feet above the ground. The high tension wires suspended through this tree at the time of the injury to the plaintiff sagged—the witnesses vary greatly in their testimony as to how much—from the cross-arm from which they were suspended and the tree was situated about halfway between the two poles so that the wires were at their lowest point where they passed through the tree. There is some testimony to the effect that the cross-arms on the poles on either side of the tree were insecurely fastened to the poles and tilted so that they were not horizontal and that the entire line was in need of repair, although other witnesses contradict this. The apple tree was a fruit-bearing tree and the apples were suitable for cooking and eating. R. J. Anstead, the father of the plaintiff, had resided with his wife and children on the "Spann" ranch for over a year at the time of the accident and had been operating a dairy on shares with Mr. Charles Spann, the owner of the place, up to about June 1, 1923. They then terminated their arrangement for the operation of the dairy, but Anstead and his family were permitted to remain on the place and occupy it without paying rental, upon condition that he should pay for the electricity consumed for light and power used by him and his family on the premises. On July 31, 1923, the plaintiff in this action and his cousin, Rex Campbell, climbed up into the apple tree to pick apples. The plaintiff did not see the wires suspended through the tree; he knew nothing

about electricity. No warning sign was placed around the tree and there was nothing to indicate that it was dangerous to climb the tree to gather the apples. The record discloses that the brother of plaintiff heard a cry or scream from the tree and a little later saw Rex Campbell crying and Rex stated that the plaintiff was hanging dead in the apple tree. The brother ran to the rescue and was assisted by his uncle in removing the plaintiff from the tree, where he was found hanging by his suspenders, unconscious. He was about nine feet from the ground. The plaintiff was severely burned and shocked and spent months in the hospital recovering from the burns. His left hand was badly burned and scarred, involving three fingers and the palm of the hand. He also received a burn behind his right ear and a severe burn on the back of the left thigh, just below the buttocks, leaving a scar four inches by two inches in triangular shape. He also received a burn over the upper outer surface of the right thigh, extending down from the great trochanter, about six and one-half inches in length and five inches in width, irregularly shaped; also a burn about an inch and a half in diameter, oval-shaped, on the posterial center portion of the right thigh. At the time of the trial the testimony showed a shrinkage of plaintiff's right leg and left arm and of the muscles of the left side of the chest. Prior to the accident plaintiff was in good health, and since the accident he has been ill and nervous. He is unable to walk or run without pain and has developed a nervous affliction known as St. Vitus dance or chorea as the direct result of the electric shock. The medical testimony offered by plaintiff was to the effect that plaintiff's injuries would permanently impair his health and strength and his power to walk and exercise.

Several questions are presented upon appeal. Those which merely involve arguments upon the weight of the evidence we shall not discuss in detail, but shall accept the findings of the jury in favor of plaintiff where the record contains any substantial evidence upon which to base such finding.

Appellant argues that the evidence does not show negligence in the maintenance and operation of its power line because it was the custom for power companies to run their wires through fruit and shade trees, after pruning out

the trees. The general practice or custom would not excuse defendant unless such practice or custom was consistent with due care. (19 Cal. Jur. 581, 582; *Perry* v. *Angelus Hospital Assn.*, 172 Cal. 311 [156 Pac. 449].)

■ The finding of negligence made by the jury, we think, was justified by the record before it. A case involving a similar principle is presented in *Howell* v. *San Joaquin Light & Power Co.*, 87 Cal. App. 44 [261 Pac. 1107]. A high degree of care is required of one who is operating a dangerous instrumentality, such as transmission wires for electricity. (10 Cal. Jur. 184; 19 Cal. Jur. 579, 581; 20 Cor. Jur. 342; *Giraudi* v. *Electric Imp. Co.*, 107 Cal. 120 [48 Am. St. Rep. 114, 28 L. R. A. 596, 40 Pac. 108]; *Tackett* v. *Henderson Bros.*, 12 Cal. App. 658 [108 Pac. 151]; *Stott* v. *Southern Sierras Power Co.*, 47 Cal. App. 242 [190 Pac. 478]; *Fairbairn* v. *American River Electric Co.*, 170 Cal. 115 [148 Pac. 788]; *Bergen* v. *Tulare Co. Power Co.*, 173 Cal. 709 [161 Pac. 269]; *Dow* v. *Sunset Tel. & Tel. Co.*, 157 Cal. 182 [106 Pac. 587]; *Robinson* v. *Western States Gas & Elec. Co.*, 184 Cal. 401 [194 Pac. 39].)

■ Appellant contends that it cannot be charged with negligence in the absence of proof that the wires were not insulated. There does not appear to be any direct proof in the record upon this question. However, we find the testimony of Herbert Anstead, the young brother of plaintiff, to the effect that he had climbed the apple tree before his brother was injured and had seen the wires move and touch the limbs of the tree. ''I seen the wires move—touch the limbs; they were touching the wire, and I saw the limbs sparking where the wires touched the limb and a spark came.'' There was also the testimony of plaintiff's father that he cut a limb from the tree, which limb, he states, projected to within six or eight inches of the wire in question, and this limb was burned and charred. It appears, therefore, that if the wires were insulated, the insulation was not sufficient to prevent the passage of the electric current to the tree. The accident itself shows that the insulation was not effective. As was said in the case of *Giraudi* v. *Electric Imp. Co.*, 107 Cal. 125 [48 Am. St. Rep. 114, 28 L. R. A. 596, 40 Pac. 109]: ''If there was any excuse for

not so locating the wires (so high above the roof that those having occasion to go there would not come in contact with them) it is on the claim that they were so covered that there was no danger in coming in contact with them. The accident itself proves that this was not sufficient, *res ipsa loquitur*."

The negligence of the defendant is to be measured by the use which it might reasonably anticipate would be made of the apple tree. (*Robinson* v. *Western States Gas etc. Co.*, 184 Cal. 401 [194 Pac. 39]; *Minter* v. *San Diego Con. Gas. etc. Co.*, 180 Cal. 723 [182 Pac. 749]; *Foley* v. *Northern Cal. Power Co.*, 14 Cal. App. 401 [112 Pac. 467]; *Giraudi* v. *Electric Imp. Co.*, 107 Cal. 121 [48 Am. St. Rep. 146, 28 L. R. A. 718, 40 Pac. 108]; *Thompson* v. *Slater*, 197 Mo. App. 247 [193 S. W. 971].)

Under the facts in evidence and the rule of law announced by the cases just cited, there is ample justification for the finding of negligence.

There is no merit in the contention that plaintiff has not shown his right to be in the apple tree at the time of the injury. The evidence shows that his family were in occupation of the ranch with implied authority to use and enjoy all its appurtenances.

It is contended that the trial court erred in the admission of certain evidence showing that the location of the power line had been changed shortly after the accident. The first instance pointed out is a question asked of the witness Wiegel and his answer thereto. This witness was the surveyor who made the map of the tree which was introduced in evidence. He was describing and explaining the map and he stated, without objection, that the poles from which the old line had been suspended had been cut off. Later, when the map was offered in evidence, the defendant objected on the ground that the map did not show conditions at the time of the accident, but at a date two years later. The objection was overruled. Counsel · for plaintiff then asked the witness whether or not the power wires were running through the tree at that time or when the witness "was down there." Over objection, the witness answered: "No, the power wires are above the top of the tree, about a foot or so." The father of the plaintiff testified

that the power line was removed shortly after the injury, over the objection of defendant, as did the witness Milford. These objections of the defendant should have been sustained, as the rule is without conflict that such evidence is inadmissible in an action for damages for negligence. (*Morris* v. *Sierra etc. Power Co.*, 57 Cal. App. 281, 296 [207 Pac. 262]; *Parkin* v. *Grayson-Owen Co.*, 157 Cal. 41 [106 Pac. 210]; *Helling* v. *Schindler*, 145 Cal. 303 [78 Pac. 710].)

Objection is made to the action of the trial court in ruling upon defendant's motion to exclude from evidence a charred limb of a tree which the father of plaintiff testified he had cut from the apple tree. It was admitted in evidence over the objection of defendant and the examination of the witness regarding it disclosed that his knowledge about the date of the scarring or burning and the cause thereof was vague and conjectural. It would seem that, under the circumstances, the motion of the defendant to exclude this evidence should have been granted, as there was nothing but surmise to connect the charred branch with the alleged injury.

It is unfortunate that these errors in the admission of evidence occurred during the course of the trial, but it does not appear that they resulted in a miscarriage of justice. Section 4½ of article VI of the constitution of this state was designed to prevent delay and expense incident to a new trial in a case such as this one. Prejudice is no longer presumed from error and it appears to us, from an examination of the entire record, including the evidence, that justice has been done by the verdict and judgment rendered. The evidence, apart from that to which objection may properly be made, justified the finding of negligence on the part of the defendant, which proximately caused the injuries to plaintiff from which he has suffered greatly in the past and will continue to suffer in the future.

We also find no merit in the contention that the verdict is excessive as a matter of law. The verdicts of juries are rarely interfered with upon this ground and only when, as has been repeatedly stated, the verdict is so grossly excessive as to suggest at first blush, passion, prejudice, or corruption on the part of the jury.

There are no other assignments of error which require discussion and the judgment is affirmed.

Curtis, J., Richards, J., Seawell, J., Shenk, J., and Waste, C. J., concurred.

Rehearing denied.

All the Justices concurred.