[L. A. No. 19187. In Bank. June 12, 1945.]

EARL H. POLK, Respondent, v. CITY OF LOS ANGELES
et al., Appellants.

Ray L. Chesebro, City Attorney, S. B. Robinson, Assistant City Attorney, and Everard L. McMurrin, Deputy City Attorney, for Appellants.

Samuel A. Rosenthal and Burton B. Crane for Respondent.

CARTER, J.—Plaintiff recovered a judgment for damages against defendants for personal injuries suffered by him as the result of a fall from a tree alleged to have been caused by the negligence of defendants in maintaining an electric power line in a dangerous condition through said tree.

Rancho Street in defendant city of Los Angeles is an east-west street which at the place involved carried little traffic. Norman Levin owns a parcel of property on the north side of the street. There are growing along the south line of his property parallel to and near the street, six eucalyptus trees and one oak tree. The eucalyptus trees range from 60 to 70 feet in height and are 6 to 10 feet apart. Some of the branches spread over the street. Defendant city as a part of its business of distributing and selling electricity, maintains a power line along the north line of the street right of way, consisting of poles 155 feet apart and cross-arms on the poles which support three laterally parallel wires about 3 feet apart and 42 to 45 feet above the ground. The wires carry 4,800 volts of electric energy. They pass through the branches and foliage of the above mentioned trees. The wires, except at the points where worn, as will presently appear, were insulated making their diameter about three-fourths of an inch, the wire itself

being about one-eighth of an inch in diameter. There are brisk winds prevailing in the vicinity during the spring months causing the trees to do "a good deal of swaying" with the result that insulation is worn off the wires at contact points.

Plaintiff contracted with Levin to trim the above mentioned trees. In the performance of his contract he was working on March 29, 1942, equipped with ropes, ladder and two uninsulated pruning hooks measuring about 8 feet and 12 feet in length respectively. Before commencing work he examined the trees and wires from the ground, and also while in the trees, and "noticed they (the wires) were well insulated" and he did not see any bare places on them. He finished the oak tree and five of the eucalyptus trees. He had partially completed the sixth eucalyptus tree, having trimmed the portion of the tree above the wires. His ladder was leaning against the sixth tree. He was standing on it at the fourth or fifth rung from the top, 25 to 30 feet from the ground when he leaned out, extending the 12-foot pruning hook full length, to cut a branch about midway between the fifth and sixth trees. His hook apparently contacted the wires and the resulting electric shock dislodged him from the ladder. The fall caused the injuries here involved. The insulation on one wire was worn off at a point about half way between the fifth and sixth trees for a space of about three feet. The bare section had resulted from the wind moving a limb of the fifth eucalyptus tree against the wire causing the limb to be somewhat charred. The bare space on the wire could be seen from the ground as shown by an inspection after the accident.

Defendants inspected their power lines twice a year. They had last inspected the wires here involved in October, 1941. However, nothing was done, even if the insulation was found worn, unless the condition existed at the same point on two parallel wires.

Plaintiff knew of the dangerous character of wires carrying electricity and observed a sign near the scene of the accident stating that the wires in question carried a high voltage. He did not insulate the pruning hook or wear rubber gloves. He had had experience trimming trees through which ran electrically charged wires and knew that the insulation was likely to be worn where rubbed by a limb.

Defendants contend that there is insufficient evidence to support the jury's implied finding of negligence; that plaintiff was contributively negligent as a matter of law; and that error was committed in giving instructions to the jury.

On the subject of negligence the standard of care is, that one maintaining wires carrying electricity is required to exercise the care that a person of ordinary prudence would exercise under the circumstances. Among the circumstances are the well known dangerous character of electricity and the inherent risk of injury to persons or property if it escapes. Hence, the care used must be commensurate with and proportionate to that danger. (See *Irelan-Yuba etc. Min. Co.* v. *Pacific G. & E. Co.*, 18 Cal.2d 557 [116 P.2d 611]; *McCormick* v. *Great Western Power Co.*, 214 Cal. 658 [8 P.2d 145, 81 A.L.R. 678]; *Smith* v. *San Joaquin Light & Power Corp.*, 59 Cal.App. 647 [211 P. 843]; *Monroe* v. *San Joaquin L. & P. Corp.*, 42 Cal.App.2d 641 [109 P.2d 720]; 10 Cal.Jur. 184-185; 1 Joyce on Electric Law, §§ 438-438b; Rest., Torts, § 298.) Specific application of that standard requires that wires carrying electricity must be carefully and properly insulated by those maintaining them at all places where there is a reasonable probability of injury to persons or property therefrom. (See *Monroe* v. *San Joaquin L. & P. Corp.*, 42 Cal.App.2d 641 [109 P.2d 720]; *Dow* v. *Sunset Tel. & Tel. Co.*, 157 Cal. 182 [106 P. 587]; *Anstead* v. *Pacific Gas & Elec. Co.*, 203 Cal. 634 [265 P. 487]; *Royal Indemnity Co.* v. *Midland Counties Pub. Service Corp.*, 42 Cal.App. 628 [183 P. 960]; *McCormick* v. *Great Western Power Co.*, 214 Cal. 658 [8 P.2d 145, 81 A.L.R. 678]; *Stanley* v. *Lander*, 3 Cal. App.2d 284 [39 P.2d 225]; 1 Joyce on Electric Law, § 445; 29 C.J.S., Electricity, § 44; 18 Am.Jur. Electricity, § 93 et seq.) Upon those controlling such instrumentality and force is imposed the duty of reasonable and prompt inspection of the wires and appliances and to be diligent therein. (See *Stasulat* v. *Pacific Gas & Elec. Co.*, 8 Cal.2d 631 [67 P.2d 678]; *Irelan-Yuba etc. Min. Co.* v. *Pacific G. & E.*, 18 Cal.2d 557 [116 P.2d 611]; *Dow* v. *Sunset Tel. & Tel. Co.*, 157 Cal. 182 [106 P. 587].) And, in the places where there is a probability of injury, they must not only make the wires safe by proper insulation, but as stated in *Dow* v. *Sunset Tel. & Tel. Co.*, 157 Cal. 182, 186 [106 P. 587], "keep them so by vigilant oversight and repair."

██ Unquestionably the jury was justified in finding that the place where the injury to plaintiff occurred was one requiring that the wires be insulated and that the inspection be diligent in order to keep them in repair. The wires ran through trees standing on private property in an area, which, although not heavily populated, was suburban. The prevailing and customary wind would probably, as apparently it did, cause the limbs of the tree to rub against the wires and impair the insulation thereon. A man of ordinary prudence should anticipate the occurrence of those events and also that the owner of the property would trim those trees. Defendants should have anticipated as a matter of common knowledge that the owner would trim the trees both for reasons of safety, that is, falling limbs, and of esthetics. As an incident of that work the trimmer would necessarily be near and about the wires. It may be that under some circumstances the height of the wires from the ground would satisfy defendants' duty but that is not true where the wires pass through trees which they should anticipate would be trimmed. An analogy to the probability that the trees would be trimmed, appears in *Monroe* v. *San Joaquin L. & P. Corp.*, 42 Cal.App.2d 641 [109 P.2d 720], where an employee of a company using electricity furnished by defendant, was injured by coming into contact with an electrically charged wire which had been improperly installed by defendant, having insufficient insulation. The employer company, not defendant, owned and maintained the wires which were connected to a transformer in a transformer yard. The employee was engaged in cutting weeds in the yard at the order of the employer company. The court said at page 649:

''In applying the test of foreseeability, for the purpose of determining negligent conduct, *it was not necessary that appellant have knowledge* of the fact that employees might be required to clear out weeds within the transformer yard. A considerable portion of the transformer yard was left in its natural state, and the growth of weeds therein was simply a normal act of nature. The necessity of requiring employees to clear out the growth of weeds from time to time was one of the circumstances which an ordinarily prudent person should have anticipated.'' (Emphasis added.) On the issues here involved the case of *Holden* v. *Cincinnati Gas &*

*Electric Co.*, 57 Ohio App. 448 [14 N.E.2d 943], is helpful. There, plaintiff, a worker on a federal relief project, was injured while trimming trees when his pruning hook contacted a bare spot on an insulated electrically charged wire running through the tree on which he was working. The court affirmed a judgment for him, stating at page 946 [14 N.E.2d:

"The last question is whether there is any substantial evidence of negligence on the part of the defendant. Appellant's counsel point out that there was no statute requiring these wires to be insulated. That is conceded, but that does not conclude the inquiry. There is a rule of universal application that wherever a person or corporation through his or its activities is brought into proximity with another, some care is required so that harm will not result to such person. The duty of care exists in the absence of any statute and if care is omitted and injury directly results therefrom, liability arises.

"In this case the defendant was conscious of the danger of electricity escaping from these wires and for that reason had them insulated originally, but failed to see that the insulation was maintained. While these wires were about 20 feet above the street, they were directly over a row of trees and among the branches of some of them. *A reasonable person would anticipate that these trees would be trimmed in course of time, and that to do so workmen would be required to climb thereon and get near these wires, and at the time have shears or saws with them.*" (See, also, *Royal Indemnity Co.* v. *Midland Counties Pub. Service Corp.*, 42 Cal.App. 628 [183 P. 960].)

With reference to inspection of the wires by defendants, it was for the jury to determine whether the semiannual inspection which they made was sufficient, considering all of the circumstances and especially the fact that the wires passed through trees, the limbs of which swayed and contacted the wires. As stated in *McCormick* v. *Great Western Power Co.*, 214 Cal. 658, 663 [8 P.2d 145, 81 A.L.R. 678], on the issue of negligence:

" 'Either the wire must be insulated, or it must be so located as to be, comparatively speaking, harmless.' . . . Such is the doctrine everywhere. . . . 'The standard to be attained is that of ordinary and reasonable care, and this means such care as a reasonably careful and prudent person, having in view the dangers to be avoided and the likelihood of injury

therefrom, would exercise, under the circumstances, in order to prevent injury. . . .' 'If,' therefore, says the court in *Minter* v. *San Diego Consol. Gas etc. Co.*, 180 Cal. 723 [182 P. 749, 750], 'guided by those considerations which ordinarily regulate the conduct of human affairs, an ordinarily prudent person would have had reasonable ground to suspect that the wires so placed would cause injury, the plaintiff can be said to have proved a breach of duty.' And where the evidence is such that reasonable men might fairly differ as to the answer to the above question, the issue is one of fact for the jury to determine, and if it finds in favor of the plaintiff, its verdict will not be disturbed.'' We conclude therefore that there was sufficient evidence to support the jury's finding of negligence.

There is nothing in *Minter* v. *San Diego Consol. Gas etc. Co.*, 180 Cal. 723 [182 P. 749], contrary to the foregoing views. There a boy was killed when he contacted insulated wires running through a tree on his father's property. The boy's purpose in ascending the tree did not appear and the court pointed out that defendant, the owner of the wires, had trimmed the trees, the court stating at page 727:

''By analogy, the defendant in the case at bar was bound to prevent its wires from interfering with *any use* of the highway and, in particular, *of the eucalyptus tree which was reasonably to be anticipated. It affirmatively appears from the plaintiff's testimony that the trees were trimmed by the defendant's workmen.* No evidence was adduced to show that the tree was used or needed for anything but shade or ornament or to show the existence of any custom with reference to the care of the tree of which the defendant would be reasonably expected to take notice and which would be likely at times to require the presence of the deceased or of any other person in the tree at a height of twenty-seven feet from the ground. In the absence of such evidence, we do not think that the existence of any such business or duty was fairly inferable under the circumstances here presented.'' (Emphasis added.) As we have seen the trimming of the trees under the circumstances here presented was an activity defendants should have anticipated.

■ Defendants point to evidence that insulation on wires carrying electricity passing through trees is not intended to protect persons from injury, but rather to insure continuous service and that their evidence showed that the wires were

maintained in accordance with the custom and practice in the industry. Suffice it to say that "Conformity by defendant to general custom of power companies with relation to the manner of maintaining power lines and rights of way does not excuse defendant unless the practice is consistent with due care. (*Anstead* v. *Pacific Gas & Electric Co.*, 203 Cal. 634 [265 P. 487]; *McCormick* v. *Great Western Power Co.*, 134 Cal.App. 705 [26 P.2d 322]; *Lim Ben* v. *Pacific Gas & Electric Co.*, 101 Cal.App. 174 [281 P. 634].)" (*Irelan-Yuba etc. Min. Co.* v. *Pacific G. & E. Co.*, 18 Cal.2d 557, 567 [116 P.2d 611].) If, as defendants aver, the purpose of insulation on wires running through trees under the circumstances here involved is not to protect persons from injury, then they confess that they took no precautions for the protection of persons whom they should anticipate might come in contact with the wires. (See *Anstead* v. *Pacific Gas & Elec. Co.*, 203 Cal. 634 [265 P. 487].)

On the subject of contributory negligence, it will be recalled that plaintiff examined the trees and the wires running through them first as a whole, and then each tree before he commenced trimming it, and later examined the wires while in the trees when he was working in them. He testified that he did not see any bare spots on the wires and they appeared to him to be "well insulated." There were places where a view of the wires was obscured by the foliage on the trees, it being thick. At the time of the accident he was on the ladder on the north side of the tree, the side opposite from the street. The ladder was lashed to the tree. He had finished the top of the tree and was on the fourth or fifth rung from the top of the ladder. Inasmuch as the branches of the sixth tree on which he was working, and those of the fifth tree overlapped, he was trimming some of the branches of the latter tree. He wrapped his left leg around the tree. He was holding with both hands his long pruning hook fully extended when, as expressed by him, he "had occasion to use my long pruner on No. 5, and the last thing I remember I was reaching out to do some kind of work, I can't recall now, and the convulsions started, and I come in some way in contact with the live wire and I couldn't free myself. All it was, it was just a jerking, and I . . . I couldn't let myself loose, and I prayed that something would help me or somebody would come to my rescue from the estate. And that is the last I remember."

The point of contact with the wire was probably 12 to 20 feet from him. He stated that he did not see the wires at the time of the accident. They were obscured by foliage. It is true that he had had many years' experience in trimming trees, including working near and about wires carrying electricity and knew of the danger, but he testified that he considered insulation as a protection against a shock; and that he did not know the amount of electricity flowing in the wires. Under all the circumstances it was a question for the jury whether plaintiff conducted himself as a man of ordinary prudence.

Defendants refer to evidence that the bare spot on the wire and a charred place on the tree was visible from the ground, having been seen by defendants' lineman, and were also visible from the trees; that, therefore, plaintiff must have seen them, or if he had exercised proper care he would have seen them. That creates nothing more than a conflict in the evidence. Plaintiff may have, consistently with due care, failed to make an inspection of the wires from the same place that others did. From his position in the tree at the time of the accident his view may well have been obscured by foliage. Under all of the circumstances it was a question of fact whether plaintiff as a person of ordinary prudence should have observed the bare spots. ▮ As recently stated by this court in *Toschi* v. *Christian,* 24 Cal.2d 354, 360 [149 P.2d 848]:

"In other words, the actor's conduct must always be gauged in relation to all the other material circumstances surrounding it and if such other circumstances admit of a reasonable doubt as to whether such questioned conduct falls within or without the bounds of ordinary care then such doubt must be resolved as a matter of fact rather than of law."

Defendants produced evidence that it was the custom among tree trimmers working near electric wires to use an insulated pruning hook and wear rubber gloves. However, plaintiff with years of experience as a tree trimmer, testified: "Q. Do you know whether tree trimmers do or do not use rubber gloves when they are working in close proximity to live wires? A. I never seen one yet that did, and I have not in all my years." In regard to the use of a non-electricity conducting rope on a pruning hook instead of a wire to operate the cutting blades, he testified: "Q. Now, then, do you know that had you used a pruner that was operated by a rope

that you would thereby have been insulated against the possibility of shock? . . . A. Well, not altogether, no. There are several different ways you may receive a shock if you are up amongst the live limbs. Q. No; but I say if you had been using one of these pruners that have been described here, the blade of which was operated by the pulling of a rope, and you reached out with the pruner and contacted the electric line with the blade of the pruner, do you know whether the dry wood handle and the rope would have protected you against the possibility of shock? . . . A. Well, that I think in my own opinion depends upon where my body was; that if my body was touching a live limb and that live limb should happen to be touching a bare spot in the wire or any place that would contact electricity, I would receive the shock just the same. Q. By MR. MCMURRIN: No, but I am not asking you, Mr. Polk, if a live branch were in contact with the wire and then the branch is in turn in contact with you. Assume for the moment that you are not touching any branches at all, but you use one of these pruners with the dry wood pole and the rope, and by accident you place the blade of that pruner against the live electric wire, do you know whether you would be insulated from shock by reason of using that dry wood and that rope to pull the blade? . . . A. Well, I don't know enough to say that I do know.'' Furthermore, from plaintiff's inspection he thought the wires were all well insulated and that he was safe because of the insulation. ▮ As expressed in *Royal Indemnity Co. v. Midland Counties Pub. Service Corp.*, 42 Cal.App. 628, 635 [183 P. 960]:

''He had the right to assume that the guy wire was safe, either by reason of its strength or by reason of proper insulation. He was doing nothing unusual or foolhardy for a man charged with his duties and performing his work in assisting the horse in disentangling itself from the wires.'' ▮ Moreover, in addition to the apparent lack of knowledge by plaintiff of any such custom or practice, and the province of the jury to find that none such existed, it is pertinent to observe that even though the actor's conduct is that customarily followed, he is not conclusively or as a matter of law absolved from the charge of negligence or contributory negligence. (19 Cal.Jur. 581.) Nor does a variation from the custom conclusively establish contributory negligence. ▮ Whether

negligence or contributory negligence may be predicated upon departure from custom is a question for the jury. (*Adamson* v. *San Francisco*, 66 Cal.App. 256 [225 P. 875].)

Thus, whether plaintiff voluntarily chose the more dangerous of two courses of conduct or whether he was contributorily negligent was a question for the jury under all the circumstances of the case.

Defendants cite many cases on the subject of contributory negligence. Each case depends upon its own circumstances and those cases do not have present the factors here involved.

Defendants complain of a jury instruction requested by plaintiff and given by the trial judge, reading:

"Applicable to the defense of contributory negligence, the rule is not that any degree of negligence, however slight, on the part of plaintiff, which directly concurs in producing the injury, will prevent his right to recover, but the rule is that if the negligence of the plaintiff amounting to the absence of ordinary care exercised by an ordinarily prudent person shall contribute proximately, in any degree, to the injury, it will prevent his right to recover." As an abstract proposition of law and when properly interpreted that instruction is a correct statement of the law. (*Rush* v. *Lagomarsino*, 196 Cal. 308 [237 P. 1066] ; *Robinson* v. *Western Pacific R. R. Co.*, 48 Cal. 409 ; *Strong* v. *Sacramento & P. R. Co.*, 61 Cal. 326.)

The first part of the instruction refers to the difference in degrees of negligence or care, and states, in effect, that slight negligence or a failure to exercise great care are not the tests for contributory negligence, but rather, as stated in the last part of the instruction, that the care must be ordinary or that exercised by a man of ordinary prudence. As indicated in *Strong* v. *Sacramento & P. R. Co., supra*, 328, after stating the rule:

"A very timid or cautious person would not, perhaps, have driven in the direction of the railroad, knowing that a train *might* pass along the track, and that the warning bell might not be sounded. But the question is: Did the plaintiff exercise ordinary care and prudence in doing what he did? The degree of caution required is relative to the risk; but no person is bound to assume that another will abandon any reasonable precaution, or violate the obligation imposed upon him by the laws of the land." Or it may mean merely that plaintiff's negligence must have proximately contributed to the injury

rather than that he was negligent regardless of its proximity. (See *Rush* v. *Lagomarsino, supra.*) In *Lufkin* v. *City of Bakersfield*, 131 Cal.App. 21 [20 P.2d 788], we have a substantially similar situation. The court said at page 27:

"Complaint [by defendant of an instruction on contributory negligence given at plaintiff's request] is next made of the following instruction: 'You are further instructed that if you find that there was on the part of the plaintiff contributory negligence in this matter which concurred directly in producing the injury, then such negligence will not bar the right of recovery of the plaintiff if such negligence is so slight as not to amount to want of ordinary care.'

"It is urged that this instruction permitted the jury to compare the negligence, if any, of the drivers of the two cars. While we do not think this instruction was necessary or to be recommended, it is true, as pointed out in *Strong* v. *Sacramento & P. R. Co.*, 61 Cal. 326, that in a legal sense a person is not guilty of negligence unless the acts said to be negligent are sufficient to amount to a want of ordinary care. In effect this instruction told the jury that if the acts of the plaintiff did not amount to negligence, they could not amount to contributory negligence. In some half-dozen instructions the jury was told that it must not compare the negligence of the two drivers, that it must not attempt to determine which of the two was guilty of the most negligence, that if the respondent's husband failed to make reasonable use of all his faculties to make a safe crossing and avoid a collision, and if he failed to do all that a person of ordinary prudence would have done under the same or similar circumstances, he was negligent, and that if any such negligence contributed proximately to the happening of the accident, no matter how slightly, plaintiff could not recover. Under the circumstances shown by this record, we are of the opinion that no reversible error appears." And in *Metcalfe* v. *Pacific Electric Ry. Co.*, 63 Cal.App. 331, 336 [218 P. 486]:

"Another point made by appellants is that the trial court erred in several of its instructions upon the question of contributory negligence. These instructions, taking a composite view of them, were to the effect that Mrs. Metcalfe's negligence, 'however slight,' or 'no matter how slight,' or contributing 'in the slightest degree' to the accident, would preclude a recovery by appellants. In all, these and similar expressions

were employed eight times in the course of the instructions, and appellants' objection is not merely that they were used at all, but that they were used so often. There is some slight confusion in the decided cases upon the question whether such qualifying terms are proper in an instruction on the law of contributory negligence, but this confusion is more apparent than real and is thoroughly dispelled if due regard be paid to the difference between the terms 'care' and 'negligence' and the relation which one bears to the other under the law. In an early case the supreme court said that 'the law regards the plaintiff as innocent unless he has been guilty of what has been called (somewhat awkwardly) 'ordinary negligence'; that is, unless the evidence shows a want of ordinary care and prudence on his part. His failure to take great care is no defense. . . . The *formula* is, not that any degree of negligence on the part of the plaintiff which directly concurs in producing the injury (however slight) will constitute a defense; but if the negligence of the plaintiff, which amounts to the absence of ordinary care, shall contribute, in any degree, proximately to the injury, the plaintiff shall not recover (*Robinson* v. *Western Pac. R. R. Co.*, 48 Cal. 409). Due attention to this language will convince that it declares the law to be exactly as the trial judge stated it to the jury in the present case. Taking the excerpt as a whole it is plain that the Supreme Court, in saying 'not . . . any degree of negligence on the part of the plaintiff . . . will constitute a defense,' intended to convey the idea that no negligence consisting only of a failure to exercise great care will constitute a defense. No other construction of the language last quoted will harmonize with the final statement of the court, 'but if the negligence of the plaintiff, which amounts to the absence of ordinary care, shall contribute, in any degree, proximately to the injury, the plaintiff shall not recover.' The law thus declared has never been departed from in this state. (See *Strong* v. *Sacramento & P. R. R. Co.*, 61 Cal. 326; *Tobin* v. *Omnibus Cable Co.*, 4 Cal.Unrep. 214 [34 P. 124]; *Sinclair* v. *Pioneer Truck Co.*, 51 Cal.App. 174 [196 P. 281].) It is true that in the case last cited the appellate court declined to reverse because the trial court had refused to use the qualifying words 'in any degree' in an instruction upon the law of contributory negligence. Nevertheless, the language of the court shows that it would have adopted the same attitude toward an objection to an instruction on the ground that it contained those

words. As to appellants' objection that the trial court so often used the qualifying words with which they find fault, it is enough to say that if it was right to use them once it was right to use them in every instance in which the court did use them. No harm was wrought by the repetitions found in the instructions.'' It cannot be doubted that the standard of care required to relieve a plaintiff of a charge of contributory negligence is that exercised by a man of ordinary prudence under the circumstances, the same as the standard of care required to relieve a defendant of a charge of negligence. (19 Cal.Jur. 648-9; Rest. Torts, § 464.) The cases of *Meredith* v. *Key System Transit Co.*, 91 Cal.App. 448 [267 P. 164]; *Markham* v. *Hancock Oil Co.*, 2 Cal.App.2d 392 [37 P.2d 1087]; *Metcalfe* v. *Pacific Electric Ry. Co.*, 63 Cal.App. 331 [218 P. 486]; *Kirchhof* v. *Morris*, 29 Cal.App.2d 481 [84 P.2d 1053]; *Cummins* v. *Yellow & Checker Cab Co.*, 127 Cal. App. 170 [15 P.2d 536]; *Botti* v. *Savill*, 97 Cal.App. 524 [275 P. 1029]; *Creamer* v. *Cerrato*, 1 Cal.App.2d 441 [36 P. 2d 1094]; *Watkins* v. *Nutting*, 17 Cal.2d 490 [110 P.2d 384], cannot be said to announce a different rule. While it is probably not advisable to give the instruction here attacked because of its lack of clarity and possible confusing character, we are satisfied that in view of the complete and exhaustive instructions given on the subject of negligence and contributory negligence that no prejudicial error occurred. For illustration the instruction immediately preceding the attacked instruction reads:

''You are instructed that the law does not concern itself with the relative degrees of negligence of the plaintiff and the defendants. Therefore, even if you should find that the defendants were negligent, still, if you further find that the plaintiff himself was negligent, and that his negligence proximately contributed to causing the injuries of which he complains, then you are not to concern yourself with the question as to whether the plaintiff's contributory negligence was equal to, or greater than, or less than, that of the defendants.

''Contributory negligence, if a proximate cause of plaintiff's injury, is a bar to his recovery, regardless of its relative degree.'' And that directly following it stated:

''You are instructed that the contributory negligence of the plaintiff, if proved, is a complete defense to this action; because it is the law of this state that if the plaintiff is guilty

of the slightest amount of negligence proximately contributing to his injuries, he cannot recover, regardless of how guilty of negligence the defendants may have been.''

Defendants object to the following jury instruction: ''It was the duty of defendants, in conducting their business of transmitting and furnishing electric power and maintaining their power lines, to consider carefully and anticipate *all* uses of the property and the eucalyptus trees upon, over and through which they maintain their power lines and to take reasonable precautions to prevent its wires from interfering therewith.

''A failure to perform this duty constitutes negligence.'' (Emphasis added.) They contend that the instruction is faulty because it in effect makes them insurers; that they are not required to anticipate *all* uses by Levin of his property, and the trees, but only such uses as they should reasonably anticipate. The instruction is subject to that criticism. As has heretofore been pointed out, defendants were only required to take precaution against uses of the property which they should anticipate as persons of ordinary prudence. However, no prejudicial error has been suffered by defendants. The sole and only use of the property involved in the instant case was the trimming of the trees, and we have determined that defendants should have reasonably anticipated such use. With no other use of the property involved or shown by the record there is no reason to suppose that the jury was misled or based its verdict on improper grounds. Those factors, coupled with other instructions which clearly advised the jury correctly upon the law, negative the existence of any prejudice. The questioned instruction cannot be said to create such a conflict with other instructions as to have misled the jury in view of the situation that the only use of the property shown by the record was that which defendants should have anticipated. Moreover, the other instructions rather than being in conflict with the questioned instruction may be described more accurately as amplifications and explanations of it.

Defendants claim error in the following instruction: ''If you believe from the evidence that plaintiff, before undertaking to perform his work of trimming the trees on the property of Norman Levin, exercised reasonable and ordinary care as a reasonable and prudent person in observing defendants' electric wires strung through the said trees, and that in so making his observations of said wires they appeared

to him insulated and in a reasonably safe condition so as to permit him to trim said trees without danger of an electric shock to his person, plaintiff was entitled to assume, and act upon this assumption, that defendants' wires were insulated through-out said trees, and he was not imposed with the duty to seek out concealed and hidden defects, if any, in the insulation of said wires, and he cannot be charged with negligence in failing to do so." They contend that it required that plaintiff make no inspection of the wires other than that made from the ground, excusing him from making an inspection while the trimming progressed, and that from the one inspection before he commenced work he could while working assume that the wires were properly insulated at all points. We do not so interpret the instruction. It left to the jury the determination of whether plaintiff exercised reasonable and ordinary care in making an inspection of the wires before commencing work, and that, if from such inspection the wires appeared safe, he could assume the wires were insulated throughout, even though there were sections of the wires concealed from his view. The jury were advised they could determine that such an inspection was not sufficient if it did not reveal defects in the insulation, that is to say, the inspection was to be measured by the standard of whether plaintiff acted as a reasonable and prudent person in making the inspection. Furthermore, the jury was instructed that:

". . . [T]he plaintiff owed a duty to use ordinary care for his own safety, and to that end to observe the conditions surrounding him *while at work,* and the structures reasonably near and about him, and the dangers, if any, which would be open and obvious to one using reasonable care and caution for his own safety, and thereupon to use the care of an ordinarily prudent workman so to carry on his work as to guard against injury to himself, so far as by such reasonable care he could protect himself.

"In other words, plaintiff was under obligation to use for his own safety all such care and caution as an ordinarily prudent intelligent workman ordinarily uses under like circumstances. And it is for the jury to say whether in this case plaintiff used that degree of care."

In connection with the foregoing instruction defendants argue the issues relative to the duty to insulate the wires, the height thereof and the place where they were strung. We

have discussed these subjects in the forepart of this opinion.

▮▮▮▮▮ Defendants contend that the court erroneously instructed the jury as to the provisions of certain rules promulgated by the Railroad Commission dealing with the maintenance of power lines. Those rules and the instructions relating to them are as follows:

"Plaintiff's Instruction No. 11.

"Said General Order No. 64-A of the California Railroad Commission provided further concerning the rules for overhead lines construction, as follows:

"31. Application.

"These provisions apply to all classes of overhead electric lines under all conditions.

"31.1. Design, Construction and Maintenance.

"Electrical supply and communication systems shall be of suitable design and construction for their intended use, regard being given to the conditions under which they are to be operated, and shall be maintained in a condition which will enable the furnishing of safe, proper and adequate service.

"The owners and employees of such systems shall at all times exercise due care to reduce to a minimum the hazard of accidental injury to their own or fellow employees, to the public and other utilities, due to the presence of overhead wires. . . .

"Lines shall be inspected frequently and thoroughly for the purpose of insuring their maintenance in a good condition so as to conform with these rules. Any defects found shall be promptly rectified. Lines temporarily out of service shall be inspected and maintained in such condition as not to create a hazard.

"A failure to inspect the lines frequently and thoroughly for the purpose of insuring their maintenance in good condition and to promptly rectify defects found, if any, constitutes negligence on the part of defendants."

"Plaintiff's Instruction No. 11a.

"Said General Order No. 64-A of the California Railroad Commission provided further concerning the rules for overhead lines construction, as follows:

"31.2. Inspection of lines.

"Lines shall be inspected frequently and thoroughly for the purpose of insuring their maintenance in a good condition

so as to conform with these rules. Any defects found shall be promptly rectified. Lines temporarily out of service shall be inspected and maintained in such condition as not to create a hazard.

"A failure to inspect the lines frequently and thoroughly for the purpose of insuring their maintenance in good condition and to promptly rectify defects found, if any, constitutes negligence on the part of defendants."

"Plaintiff's Instruction No. 11b.

"Said General Order No. 64-A of the California Railroad Commission provided further concerning the rules for overhead lines construction, as follows:

"32. GENERAL CLEARANCES.

"These clearances shall apply to all overhead lines under the various conditions met.

"33. TREE TRIMMING.

"Where overhead wires pass through trees, safety and reliability of service demand that a reasonable amount of tree trimming be done in order that the wires may clear branches and foliage.

"Trees so located that they can fall into a crossing span or into any span that could communicate the trouble to the crossing span shall be removed wherever practicable."

Defendants offered instructions to the effect that the above orders were inapplicable to the case and should be disregarded by the jury. Their request was refused. It is defendants' position that the safety rules of the Railroad Commission are not binding upon a municipality operating an electric system inasmuch as it has no jurisdiction over municipally operated utilities. (Cases are cited which will be discussed presently.)

The present Railroad Commission was created by an amendment to the Constitution on October 10, 1911. (Cal. Const., art. XII, § 22.) Thereafter it was held that the powers conferred on the commission did not extend to the regulation of utilities operated by municipalities; that its power of regulation was limited to privately operated public utilities; and that the Legislature could not extend that power to embrace municipally operated utilities. (*City of Pasadena* v. *Railroad Commission*, 183 Cal. 526 [192 P. 25, 10 A.L.R. 1425].) The following cases hold to the same effect. (*Jochimsen* v.

*City of Los Angeles*, 54 Cal.App. 715 [202 P. 902]; *Water Users etc. Assn.* v. *Railroad Com.*, 188 Cal. 437 [205 P. 682]; *Durant* v. *City of Beverly Hills*, 39 Cal.App.2d 133 [102 P. 2d 759].) And according to the same principle a municipal corporation is not required to obtain from the Railroad Commission a certificate of public convenience and necessity to maintain and operate a public utility. (*Los Angeles Gas etc. Corp.* v. *Department of Pub. Serv.*, 52 Cal.App. 27 [197 P. 962].) However, there are two valid grounds for holding that the above rule does not render inapplicable to municipally operated utilities, in actions based upon the negligence of the municipality, the safety standards established by the Railroad Commission with reference to the maintenance of wires carrying electricity. First, a statute was adopted in 1911 which sets forth certain safety requirements for such electric equipment. (Stats. 1911, p. 1037; Deering's Gen. Laws, 1944, Act 2284.) That act by its express terms applies to municipalities.

"No commission, officer, agent or employee of the State of California, or of any city and county or city or county or other political subdivision thereof, and no other person, firm or corporation shall . . .," and then follow the various requirements. (Stats. 1911, p. 1037, § 1.) A violation of the act is a misdemeanor (§ 4). It is also provided in said act that:

"The railroad commission of the state of California is hereby vested with authority and power, . . . and is hereby instructed to inspect all work which is included in the provisions of this act, and to make such further additions or changes as said commission may deem necessary for the purpose of safety to employees and the general public, and the said railroad commission is hereby charged with the duty of seeing that all the provisions of this act are properly enforced." (§ 8.)

The rules embraced in the instructions to the jury in the instant case were promulgated pursuant to the foregoing statute. There can be no doubt that the Legislature was empowered to pass such a statute and make it applicable to municipally operated electric systems even though the municipality is chartered and has control over municipal affairs. The safety of overhead wire maintenance is a matter of state-wide, rather than local, concern, and the state law is para-

mount. It has been held that the public liability act (Stats. 1923, p. 675; Deering's Gen. Laws, 1944, Act 5619) which imposes liability upon municipalities for dangerous or defective condition of public streets, highways, buildings, grounds, works and property embraces a subject of state-wide concern rather than municipal affairs. (*Douglass* v. *City of Los Angeles*, 5 Cal.2d 123 [53 P.2d 353]; *Rafferty* v. *City of Marysville*, 207 Cal. 657 [280 P. 118]; *Helbach* v. *City of Long Beach*, 50 Cal.App.2d 242 [123 P.2d 62].) And the requirements with respect to maintenance and elimination of grade crossings in a municipal corporation where the carrier is a private public utility, is not a municipal affair (*City of San Mateo* v. *Railroad Commission*, 9 Cal.2d 1 [68 P.2d 713]), because danger to the public is a matter of state concern. ■ Specifically, the rules of the Railroad Commission with reference to maintenance of pole lines are applicable to a city, although the commission has no authority to regulate or control city utilities. (See *Sincerney* v. *City of Los Angeles*, 53 Cal.App. 440, 445 [200 P. 380].) Such safety rules are in reality not regulations or the exercise of control by the commission of the municipally owned utility as considered in *City of Pasadena* v. *Railroad Commission, supra*, and the cited cases. Rather they are nothing more than safety requirements in which the entire state has an interest. The imposition of liability for dangerous condition of municipal property undoubtedly imposes upon the city the alternative of adopting safety measures or suffering the ensuing liability for failure in its duty. Likewise, the safety rules here involved impose the same alternative. ■ Furthermore, it is pertinent to observe that "If a state statute affects a municipal affair only incidentally in the accomplishment of a proper objective of state-wide concern, then the state law applies to charter cities. (*Dept. of Water & Power* v. *Inyo Chem. Co.*, 16 Cal.2d 744 [108 P.2d 410].)" (*Wilson* v. *Walters*, 19 Cal.2d 111, 119 [119 P.2d 340].) The effect of the rules in the instant case is purely incidental.

■ Even if it be assumed that the commission's authority is limited to the regulation of privately owned public utilities and that the commission had no authority to adopt rules and regulations applicable to defendants and none could be conferred upon it by the Legislature (see *City of Pasadena* v.

*Railroad Commission, supra*), yet the Legislature has conferred upon the commission the duty of making safety rules and regulations applicable to privately owned public utilities, and it is clear that such rules and regulations establish the standard of care required of such utilities. We can perceive of no reason why the same standard of care should not be applicable to all utilities whether publicly or privately owned. Hence, it was proper for the trial court to advise the jury that such rules and regulations had been adopted and promulgated by the Railroad Commission and that they could be considered in determining whether defendant had exercised the standard of care required of those maintaining electric power lines under the circumstances here presented.

 Defendants further complain of instruction 11b in that part of the regulations are omitted and that there is no relation between the clearance of trees mentioned in section 32 and section 33 of General Order No. 64-A of the Railroad Commission concerning tree trimming. While the instructions are subject to criticism we do not believe prejudicial error was committed in view of the generality of the language used and the apparent propriety of the rules of care set forth.

 Objection is made to an instruction reading:

"The defendants in this case claim as a defense that the accident involved herein was an inevitable or unavoidable accident insofar as the said defendants are concerned. This is an affirmative defense and the burden of proving it rests entirely upon the defendants who allege the same. You are instructed that an inevitable or unavoidable accident is one that happens without negligence in any manner or degree contributing thereto; but if you find in this case that the defendants City of Los Angeles and Department of Water and Power were guilty of negligence, if any, no matter how slight, which was the sole proximate cause of the accident, or a contributing proximate cause, then it is said in law, and I so charge you, that the accident in which the plaintiff was involved and which is now being submitted to you, was not an inevitable or unavoidable accident as to the said defendants, City of Los Angeles and Department of Water and Power," on the ground that it erroneously imposes upon defendants the burden of proving an unavoidable accident in connection with the charge of negligence against it. That instruction is clearly erroneous inasmuch as the so-called defense of inevitable acci-

dent is nothing more than a denial by defendant of negligence or a contention that his negligence, if any, was not the proximate cause of the injury. It is not an affirmative defense and the burden of proof rests upon plaintiff to prove negligence and proximate cause by a preponderance of the evidence. (See *Jolley* v. *Clemens*, 28 Cal.App.2d 55 [82 P.2d 51], for a discussion of the matter and the cases bearing thereon.) However, there was no prejudicial error in the instant case. It will be noted that the latter part of the questioned instruction left it for the jury to determine the issue of defendant's negligence. The jury were elsewhere comprehensively instructed that the burden of proof of negligence rested on plaintiff. On the issue of defendants' negligence, we believe the case, unlike *Jolley* v. *Clemens, supra,* is not a close one. The evidence clearly establishes defendants' negligence.

For the foregoing reasons the judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

EDMONDS, J.—My associates hold that the rules and regulations promulgated by the Railroad Commission "could be considered in determining whether defendants had exercised the standard of care required of those maintaining power lines under the circumstances here presented," but the jury was instructed that a violation of any one of those rules constitutes negligence as a matter of law. For that reason, in my opinion, the giving of such instructions amounted to prejudicial error entitling the defendants to a new trial.

Quoting specified rules of the Railroad Commission, the trial court twice instructed the jury: "A failure to inspect the lines frequently and thoroughly for the purpose of insuring their maintenance in good condition and to promptly rectify defects found, if any, constitutes negligence on the part of defendants." These instructions were immediately followed by one which reads: "However, in this action a violation of law is of no consequence unless it was a proximate cause of or contributed to some degree as a proximate cause to any injury found by you to have been suffered by the plaintiff." By this charge, the jury was told that the regulations of the Railroad Commission constituted the law binding upon the municipal utility, a violation of which would subject

it to liability yet the instructions are justified as going no further than stating a standard of care which might be considered by the jury in determining whether the defendants were guilty of negligence.

The distinction between the proof relating to (1) the establishment of the standard of care and (2) the conduct of the party charged with negligence in failing to meet that standard was clearly made in *Clinkscales* v. *Carver*, 22 Cal.2d 72 [136 P.2d 777]. As the court there pointed out, "The decision as to what the civil standard should be .˙. . rests with the court. . . . In the absence of such a standard the case goes to the jury, which must determine whether the defendant . . . acted as a reasonably prudent man would act in similar circumstances. The jury then has the burden of deciding not only what the facts are but what the unformulated standard is of reasonable conduct. . . . When the court accepts the standard it rules in effect that defendant's conduct falls below that of a reasonable man as the court conceives it."

In that case, the defendant failed to comply with a stop sign which had been erected at a highway intersection without legal authority. If the defendant failed to stop at that sign, the jury was instructed, he was guilty of negligence as a matter of law. A majority of this court affirmed the judgment for the plaintiff upon the ground that, although there was no violation of a traffic ordinance, the stop sign stood as a warning to drivers and constituted a standard of care the violation of which constituted negligence as a matter of law. The dissenting opinion of Justice Shenk, in which I joined, called attention to the fact that the cases cited in support of the decision "go no further than to hold that the jury may consider the existence of a so-called *de facto* stop sign in determining the question of the defendant's negligence. The withdrawal of that issue from the jury . . . [therefore] was manifestly prejudicial."

By the present decision, my associates have not held that the rules of the Railroad Commission were accepted by the trial court as fixing the standard of care, but the instructions to the jury are justified notwithstanding the lack of such a premise. Accordingly, in my opinion, even if it be assumed that the reasoning of the majority opinion in the Clinkscales case is correct, it is not authority for the present holding.

Summarizing the situation shown by the record now before the court, the instructions relating to the rules of the Railroad Commission are entirely inconsistent with the statement of Mr. Justice Carter concerning the effect to be given the rules. Clearly under such circumstances, it seems to me, the instructions were prejudicially erroneous and the judgment should be reversed.

Appellants' petition for a rehearing was denied July 9, 1945. Shenk, J., and Edmonds, J., voted for a rehearing.