514 P.2d 1275 (1973)
Frances H. LARMAN, as Administratrix of the Estate of Paul R. Larman, Deceased, Appellant,
v.
KODIAK ELECTRIC ASSOCIATION, Appellee.
No. 1827.
Supreme Court of Alaska.
October 15, 1973.
*1276 John S. Hedland and Hugh W. Fleischer of Rice, Hoppner, Blair & Hedland, Anchorage, for appellant.
Sanford M. Gibbs, of Hagans, Smith & Brown, Anchorage, for appellee.
Before RABINOWITZ, C.J., and CONNOR, ERWIN, and BOOCHEVER, JJ.

OPINION
BOOCHEVER, Justice.
On June 13, 1968, appellant's intestate,[1] Paul Larman, was electrocuted when a crane he was operating came into close proximity or contact with transmission lines owned and maintained by appellee Kodiak Electric Association (hereinafter KEA). The case was tried without a jury. We are asked in this appeal to review findings of the superior court that KEA was not negligent, and that even if negligence had been shown, the decedent's contributory negligence bars recovery.
At the time of the accident Paul Larman was operating a truck-mounted telescopic hydraulic crane for his employer, Larman Construction Company, in a driveway adjacent *1277 to Shelikoff Avenue in Kodiak, Alaska. In the vicinity of the accident Shelikoff Avenue and KEA's power lines run approximately parallel to the shore of St. Paul Harbor. The power lines were about fifteen feet east of the road on the harbor side; still further east of the lines the ground level dropped down a bank to the tide line. The driveway extended east from Shelikoff Avenue under the power line to a dock on which a cannery was located.
Paul Larman and two co-workers  his brother, Henry, and Robert Norton  earlier had picked up some leads and a hammer which they had been assigned to unload on the beach north of the driveway and dock in preparation for a pile-driving job in the area. Because there were several cars parked along the driveway, they parked their crane directly under the KEA power lines.
The transmission lines included three uninsulated primary conductors, each carrying 7200 volts. The wires were all about 31 feet off the ground and separated from each other by approximately three and one-half feet. About four feet below them was an uninsulated ground wire. The ground wire carried no current. The uninsulated high-voltage wire configuration, known as a grounded-Y system, was found by the court to be a common system for distribution in both Alaska and the nation, and consistent with all applicable safety codes and ordinances.
The power line had originally been planned by KEA's consulting engineer for the west side of Shelikoff Avenue, but the city manager had asked KEA to move it to the east (shore) side because there was extensive construction activity underway on the other side. In accord with this request, KEA had the line restaked and installed on the shore side about a year and a half before the accident.
At the time of the accident Larman was operating the crane from ground-level controls on the truck, trying to maneuver a two and one-half ton lead around the power lines. The trial court found that the lines were plainly visible to Larman, and that because of his experience, he could reasonably be expected to recognize high-voltage lines. He had been warned by one or both of his co-workers to exercise care when operating near the wires. One co-worker, Norton, was down the bank holding onto a tagline to steady the load. Decedent's brother, Henry Larman, was at road level holding another tagline. Norton testified that at one point he looked up because the load was not moving, and saw sparks coming from Paul Larman's feet. Norton then saw a 6 or 8 inch arc between the boom tip and the power line. He ran up the bank and attempted to pull Larman free of the crane, but was shocked himself and knocked back down the bank. He testified that Henry Larman also tried to pull his brother free, and it was probably Henry that succeeded. Paul fell to the ground, fatally injured.
Although no evidence was admitted that the boom actually touched the wires, Leon Johnson, manager of KEA, was at the scene shortly after the accident and testified that he observed the boom between two of the primary conductors. He also observed burn marks on each side of the boom and on both conductors. The trial judge concluded:
that whether or not actual contact with the overhead wires was made or whether contact was merely in sufficient proximity to cause the arc to occur energizing the crane boom was not established but the distinction is not controlling in that the distance was a matter of inches.
From the evidence sketched above, the trial judge ruled that KEA had not breached its duty to the deceased; and that even if KEA were negligent, the decedent was contributorily negligent, and thus barred from recovering.
Appellant raises several points for our review. She contends first that KEA did breach its duty to Larman, and that Larman was not contributorily negligent. In support of her contention that KEA was *1278 negligent, appellant argues that two of the trial court's findings were not supported by the evidence, and were therefore "clearly erroneous." If we accept this theory and conclude that Larman was contributorily negligent, we are asked either to find that KEA's conduct constituted willful and wanton negligence (which would defeat contributory negligence as a defense), or to adopt a comparative negligence standard for this state. Our resolution of the negligence issue makes it unnecessary to reach the issue of contributory negligence and also renders the case inappropriate for resolving appellant's contention that this court should adopt a comparative negligence standard for Alaska.
We deal first with appellant's contention that the trial court erred in two of its findings of fact. In reviewing findings of fact of a trial judge sitting without a jury, we are bound by the "clearly erroneous" standard of Alaska Rule of Civil Procedure 52(a).[2] That standard was explained in Alaska Foods, Inc. v. American Manufacturer's Mutual Insurance Co., 482 P.2d 842, 848 (Alaska 1971):
A finding is clearly erroneous when, although there may be evidence to support it, we are left with the definite and firm conviction on the entire record that a mistake has been committed.
* * * * * *
The clearly erroneous standard, as we apply it, means something more than merely showing it is more probable than not that the trial judge was mistaken. We must be convinced, in a definite and firm way, that a mistake has been committed. We must be well persuaded by the party seeking to set aside the trial judge's findings before we will hold he was wrong.
Appellant contends that portions of two of the findings of fact below are clearly erroneous because there is no evidence in the record to support them. The allegedly erroneous findings are:
12. That the three (3) primary conductors carried seven thousand, two hundred (7,200) volts each in what is commonly known as a grounded Y system; that such a system and the uninsulated wire used in this particular system is a common method and is common equipment used in the distribution of electricity both in Alaska and across the nation as a whole.
18. That the defendant was not in violation of any safety code or ordinance with regard to either the height of its line, the lack of insulation, the placement of the line or in any respect.
In Finding # 12, the conclusion that uninsulated wires were "common equipment ... both in Alaska and across the nation" is claimed as error. At trial, KEA manager Leon Johnson was asked by the court as to the "material" of which the wires were composed:
JOHNSON: Aluminum, They're called ACSR, aluminum conductors, steel reinforced. They have, as I recall, 6 strands of aluminum, one of [sic] strand of high tension steel for support and strength, and aluminum for conductivity.
COURT: Is that the usual type of material used in the distribution line of this type?
JOHNSON: It is in that area because of the heavy loading. In the lighter residential areas, it's the same kind of material but quite often much smaller.
COURT: Is that a statewide practice?
JOHNSON: It's very standard.
COURT: A nationwide practice.
JOHNSON: It's used nationwide.
Though appellant correctly notes that no mention is made of insulation per se, we are not "convinced, in a definite and firm way, that a mistake has been committed."[3] *1279 Once the judge had raised the issue of the "material" of which the cables were composed, and heard Johnson's response, which did not mention insulation, he could well conclude that the "material" used in the lines did not include insulation. If appellant wished to controvert this testimony, which tended to indicate that lack of insulation was common, this could have been accomplished by cross-examination or direct testimony. But appellant never raised the issue again at trial.
Appellant next contends that Finding # 18 is clearly erroneous because KEA did not secure written permission from the city before moving its line from the west side to the east, or shore, side of Shelikoff Avenue, thereby failing to comply with Kodiak Ordinance # 246, which provides:
All poles and wires forming part of [the] electric system shall be erected, operated and maintained so as not to interfere with traffic on the travelled portion of the streets or alleys, as approved in writing by the City Manager or the City Engineer prior to erection; ... .
Although the testimony indicated that written permission had never been secured for the move, Johnson's uncontradicted testimony was that KEA moved the lines at the verbal request of the city manager. The trial judge could have concluded under the circumstances that KEA's reliance on the verbal request of the City Manager constituted adequate compliance with the statute. Certainly it would be overly technical to hold as clearly erroneous the court's finding that the ordinance was not violated.
We next deal with the superior court's ultimate finding that KEA breached no duty of care owed to Larman and that it was therefore not negligent. Alaska follows the majority rule that review of findings of negligence are subject to the provisions of Rule 52(a).[4] Such findings shall not be set aside unless clearly erroneous. Our decisional function is thus curtailed. We need not decide whether if confronted with these facts we would make the same decision as the trial court, for we are limited to ascertaining whether the trial court's decision is clearly erroneous. It is in this light that we examine the court's finding that there was no negligence.
For there to be negligence in this case, three elements are essential: (1) KEA must have owed some duty to Larman; (2) that duty must have been breached, and (3) the injury to Larman must have been proximately caused by the breach. Although we have found no reported cases directly on point in this jurisdiction,[5] the duty of an electric company to persons working near its lines has been the subject of much litigation. We adopt generally the standard articulated by the California Supreme Court in Polk v. City of Los Angeles, 26 Cal.2d 519, 159 P.2d 931, 934 (1945) (en banc):
On the subject of negligence the standard of care is, that one maintaining wires carrying electricity is required to exercise the care that a person of ordinary prudence would exercise under the circumstances. Among the circumstances are the well known dangerous character of electricity and the inherent risk of injury to persons or property if it escapes. Hence, the care used must be commensurate with and proportionate to that danger.
Specific application of that standard requires that wires carrying electricity must be carefully and properly insulated by those maintaining them at all places where there is a reasonable probability of injury to persons or property therefrom. [Citations omitted.][6]
*1280 Thus we must direct our attention to whether KEA exercised adequate care in this instance. The uninsulated wires were 31 feet above the ground on the east side of the road and in an area that KEA knew involved a moderate amount of construction activity. We are confronted with no evidence that KEA knew of the specific activities engaged by the three men on the day of the fatality. Evidence was presented indicating that there had been a few other incidents involving contact with KEA power lines in the past. None of the prior difficulties involved the wiring which had been removed to the east side of Shelikoff Avenue.[7] Neither the previous accidents nor awareness of general activity would have led KEA to foresee Larman's maneuvering a crane into 31-foot-high power lines. We have been directed to no cases which require an electric company to be an insurer. On the contrary, the rule is that the electric company is liable for only those injuries which are foreseeable. Perrine v. Pacific Gas & Electric Co., 186 Cal. App.2d 442, 9 Cal. Rptr. 45, 49 (1960); Lewis v. Pacific Gas & Electric Co., 95 Cal. App.2d 60, 212 P.2d 243 (1949); Donovan v. Union Electric Co., 454 S.W.2d 623, 625 (Mo. App. 1970); Dillard v. Southwestern Pub. Serv. Co., 73 N.M. 40, 385 P.2d 564, 567 (1963); Trimyer v. Norfolk Tallow Co., 192 Va. 776, 66 S.E.2d 441 (1951) and cases therein cited.
At 31 feet, the lines were substantially higher than applicable codes required. According to the uncontradicted testimony of Johnson, the national electric safety code required that wires with up to 15,000 volts be at least 18 feet off the ground. While compliance with the codes is not conclusive evidence of absence of negligence, Perrine v. Pacific Gas & Electric Co., 186 Cal. App.2d 442; 9 Cal. Rptr. at 59, the height regulations are at least in part for the benefit of those who pass beneath or work near the lines. That KEA placed its line thirteen feet higher than called for is evidence of reasonable behavior. Dillard v. Southwestern Pub. Serv. Co., 73 N.M. 40, 385 P.2d at 565; Virginia Elec. and Power Co. v. McCleese, 206 Va. 127, 141 S.E.2d at 759.
Appellant argues that the failure to insulate the high voltage wires constituted a breach of its duty toward Larman. It was KEA's responsibility to take precautions only against foreseeable accidents. As the Polk court said: "[W]ires carrying electricity must be carefully and properly insulated by those maintaining them at all places where there is a reasonable probability of injury to persons or property therefrom." 159 P.2d at 934 (emphasis added). Accord, Ruth v. Pacific Gas & Electric Co., 23 Cal. App.3d 806, 100 Cal. Rptr. 501, 507 (1972). If the wires had been closer to the ground there might have been a greater chance that there would be contact. Then a court might be required to find that reasonable behavior included insulation of high-voltage lines. But here the lines were 31 feet above the road. The failure of KEA to insulate its lines under these circumstances cannot be made the basis for holding clearly erroneous the trial court's finding that KEA breached no duty to Paul Larman.
Finally, appellant contends that the lines should have been placed underground, or on the other side of Shelikoff Avenue, either at the time they were originally put in or at some later date. We *1281 find little merit to these arguments in the instant case. Johnson's testimony indicated that the initial cost of underground installation would have been approximately ten times that for overhead lines, and that Kodiak had had substantial maintenance problems with underground lines because rats were breaking terminals underground. With respect to which side of the street the lines were on, there was evidence of substantial activity on both sides of Shelikoff Avenue at the time of the accident. The risk of an accident on the other side of the street was comparable to that on the shore side, and leaving the line where it was avoided considerable expense to KEA, and shutdown of the local canneries.
We conclude that the trial court did not clearly err in finding that KEA breached no duty by failing to insulate its lines or by placing or leaving those lines on the shore side of Shelikoff Avenue. As noted above, our resolution of the issue of KEA's negligence makes it unnecessary to discuss contributory negligence or appellant's contention that we should adopt a comparative negligence standard.
Finding no error below, we affirm.
FITZGERALD, J., not participating.
NOTES
[1] This suit was brought pursuant to Alaska's survival and wrongful death statute, formerly AS 13.20.330 and AS 13.20.340, now AS 09.55.570 and AS 09.55.580.
[2] Rule 52(a) provides in part:

Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witness.
[3] Alaska Foods, Inc. v. American Mfrs. Mut. Ins. Co., 482 P.2d 842, 848 (Alaska 1971).
[4] Roach v. Benson, 503 P.2d 1392, 1394 (Alaska 1972). See Wright and Miller Practice and Procedure: Civil § 2590 (1971) [Rule 52(a) is set forth in n. 2, supra.]
[5] Cf. Van Reenan v. Golden Valley Electric Association, Inc., 379 P.2d 958 (Alaska 1963).
[6] To the same effect are Dillard v. Southwestern Pub. Serv. Co., 73 N.M. 40, 385 P.2d 564 (1963); Manaia v. Potomae Elec. Power Co., 268 F.2d 793, 797 (4th Cir.1959) (applying Maryland law); Virginia Elec. and Power Co. v. McCleese, 206 Va. 127, 14 S.E.2d 755, 758 (1965).
[7] Johnson testified that he estimated that there had been approximately three accidents involving the KEA power lines within recent years. He was aware that one involved the decedent, Paul Larman, when he came into contact with some telephone lines and low voltage lines. Two other incidents that Johnson could remember involved Amil Larman, the decedent's brother; one was approximately three years before the fatality. None involved serious injury.