James W. FERRISS, Appellant,

v.

CHUGACH ELECTRIC ASSOCIATION, INC., a corporation, and Texaco, Inc., a corporation, Appellees.

No. 2323.

Supreme Court of Alaska.

Dec. 17, 1976.

James K. Tallman, Anchorage, for appellant.

Kenneth P. Jacobus, Anchorage, for appellee Texaco.

Timothy M. Stone, Anchorage, for appellee Chugach Elec.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

## OPINION

BURKE, Justice.

This is an appeal from the trial court's granting of motions for directed verdicts in favor of both defendants in an action for personal injuries. The plaintiff, James W. Ferriss, was injured on November 3, 1970, when a piece of angle iron he was holding came into contact with a high voltage electrical power line. Ferriss was employed by Rotta Sheet Metal Works, Inc. (Rotta). Rotta was a contractor engaged by Defendant Texaco, Inc. (Texaco), to install metal canopies above gas pumps at Texaco service stations throughout Alaska. The accident occurred while such a canopy was being constructed at the Texaco station located at the intersection of International Airport Road and the Old Seward Highway, in Anchorage. At the time of his injury, Ferriss was standing atop a 14-foot, 3-inch canopy and was holding a length of angle iron.

The power lines which passed over the newly constructed canopy consisted of a four wire system, one of which was effectively grounded. The other three "phase wires" carried 7,200 volts potential between each wire and the ground, and the potential between any two of the "phase wires" was over 12,000 volts. The wires were not insulated. The authority to run the high voltage lines across the Texaco service station lot had been acquired by defendant

Chugach Electric Association, Inc., (CEA), owner of the lines, by an easement. The lines had been installed on January 21, 1966, four years prior to the construction of the canopy and the accident which is the subject matter of this case.

Ferriss was apparently aware of the existence of the wires, although he attached little significance to them. Whether Ferriss had been warned about the potential danger posed by the power lines is disputed; he maintains that no such warning was issued to him. About 3:00 P.M. on November 3, 1970, while atop the partially completed canopy, Ferriss swung a piece of angle iron he was holding into contact with the power lines above him. Ferriss was hospitalized for injuries suffered as a result of electric shock.

Ferriss filed his complaint against Texaco and CEA in superior court. The case was removed to the United States District Court for the District of Alaska on the motion of defendant Texaco. Subsequently, on motion of the plaintiff, the case was remanded to the superior court.

In the superior court the case eventually came on for trial by jury. At the close of all evidence the trial court directed verdicts in favor of both defendants and judgments were entered accordingly. Ferriss has appealed seeking reversal of the two judgments entered below. He contends that the trial court erred in granting the defendants' motions for directed verdicts.

■ In reviewing the trial court's rulings in favor of the defendants, we must view the evidence presented in the light most favorable to the party against whom the motions for directed verdicts were made and we must afford him all inferences which the evidence fairly supports.[1]

As we recently stated in *Bachner v. Rich,* 554 P.2d 430 (Alaska 1976):

> The moving party is entitled to a directed verdict only if it can be said that fairminded jurors in the exercise of reasonable judgment could reach but one conclusion on the issue in controversy. If such reasonable persons could reach differing conclusions, a jury question or question of fact exists, and the motion for a directed verdict should be denied.[2]

■ If there were no such question posed by the evidence, then the defendants were entitled to judgment on the law and the granting of their motions for directed verdicts against the plaintiff was proper. Because liability against each defendant is premised on distinct and separable legal theories, the propriety of the trial court's granting of each of the motions for a directed verdict will be reviewed individually.

## DIRECTED VERDICT IN FAVOR OF DEFENDANT CHUGACH ELECTRIC ASSOCIATION, INC.

■ Ferriss contends that the trial court erred in ruling that the evidence presented was insufficient, as a matter of law, to hold CEA liable for his injuries. To merit a reversal of the judgments entered below, he must persuade us that reasonable people could have drawn different inferences and conclusions from the evidence presented at trial. Ferriss has advanced three theories of liability against CEA on which, he claims, there was sufficient evidence presented to submit the case to the jury. These theories involve two sections of the National Electrical Safety Code[3] (the Code) and the standard of due care required of carriers of electrical power.

1. *Teller v. Anchorage Asphalt Paving Co., Inc.*, 545 P.2d 177 (Alaska 1976); *Holiday Ins. of America, Inc. v. Peck*, 520 P.2d 87 (Alaska 1974); *Breitkreutz v. Baker*, 514 P.2d 17 (Alaska 1973); *City of Fairbanks v. Nesbett*, 432 P.2d 607 (Alaska 1967); *Howarth v. Pfeifer*, 423 P.2d 680 (Alaska 1967); *Otis Elevator Co. v. McLaney*, 406 P.2d 7 (Alaska 1965).

2. 554 P.2d at 436.

3. The National Electrical Safety Code was adopted by the Alaska State Legislature in 1969 as AS 18.60.580.

**766**

■ *Section 234C of the Code.*[4] Section 234C of the Code requires an eight-foot minimum vertical clearance between any "structure" and any supply conductor having a voltage of between 300 and 8700 volts. First, Ferriss contends that since the construction of the canopy reduced the clearance between CEA's power lines and the nearest "structure" to less than the required eight-foot minimum distance, the maintenance of the wires at their previous elevation constituted a violation of this section of the Code. Ferriss then borrows language from the Restatement of Torts (Second) and concludes that this violation of the Code renders CEA strictly liable for his injuries.

Admittedly, Comment b to Section 424 of the Restatement of Torts (Second) states that ". . . if the duty imposed . . . (by statute or regulation) . . . is an absolute one, the employer is subject to liability for the failure of the contractor to provide the required safeguard or protection. . . ." But, a close examination of appellant's argument quickly reveals that he has misapplied this section of the Restatement in constructing his argument. Comment b to Section 424 is directed towards employers and independent contractors, and failure by contractors to comply with the mandatory requirements of safety statutes or regulations for the benefit of their employees. Contrary to appellant's contention, the relationship between him and CEA, if there is one, is not the type to which this section of the Restatement is addressed. Thus, Section 234 C of the Code and Section 424 of the Restatement of Torts (Second) provide no legal basis for submitting the issue of CEA's strict liability for Ferriss' injuries to the jury.

■ *Section 213A of the `Code.*[5] This section of the Code requires that electrical lines and equipment be systematically inspected from time to time by the person responsible for the installation. Ferriss contends that there was sufficient evidence of a violation of this section by CEA to warrant the submission of the question of CEA's liability for his injuries to the jury. We disagree. The uncontroverted evidence admitted at trial clearly indicates that the canopy had been installed just prior to the day on which Ferriss was injured. In fact, the canopy had risen to a height which rendered the distance from the top of the canopy to the wires in violation of the Code on the day before he was injured.

While Section 213A of the Code does require systematic inspections by owners or operators of electrical installations, such inspections are required, in the words of the Code, only "from time to time". There

---

4.  Section 234C(4)(a)(1) of the Code, Table 4, provides.

Clearance of Supply Conductors From Buildings

| Voltage of Supply Conductors | Horizontal Clearance | Verticle Clearance |
|---|---|---|
| | Feet | Feet |
| 300 to 8,700 | 3 | 8 |
| 8,700 to 15,000 | 8 | 8 |
| 15,000 to 50,000 | 10 | 10 |
| Exceeding 50,000 | 10 plus 0.4 inch per kv in excess | 10 plus 0.4 inch per kv in excess |

---

5.  Section 213A(2) of the Code, at page 44, provides:

Lines and equipment shall be systematically inspected from time to time by the person responsible for the installation.

was no evidence presented at trial from which a reasonable jury could have concluded that a systematic inspection of its installations, by CEA, from time to time, would have advised the power company of the dangerous condition created by the construction of the canopy in close proximity to its wires. Thus, the trial court was correct in ruling that there was no question of fact to be decided by the jury with respect to CEA's liability, based on Section 213 A of the Code, for Ferriss' injuries.

■ *Breach of Duty.* Finally, Ferriss argues that the question of CEA's liability for his injuries should have been submitted to the jury for a determination of whether the company breached its common law duty of due care to him. In granting the defendant's directed verdict against Ferriss, the trial court ruled that there was insufficient evidence presented from which a reasonable jury could have concluded that CEA knew or should have known that its wires posed a hazard to persons such as Ferriss.

This court has addressed the question of the duty owed by providers of electrical energy with respect to its power lines and installations before. The standard of care required of a person maintaining wires carrying electricity in the State of Alaska was defined in *Larman v. Kodiak Electric Association,* 514 P.2d 1275 (Alaska 1973). There we adopted the standard which had been previously enunciated by the California Supreme Court in *Polk v. City of Los Angeles,* 26 Cal.2d 519, 159 P.2d 931 (1945). We stated in *Larman* the following:

> On the subject of negligence the standard of care is, that one maintaining wires carrying electricity is required to exercise the care that a person of ordinary prudence would exercise under the circumstances. Among the circumstances are the well known dangerous

character of electricity and the inherent risk of injury to persons or property if it escapes. Hence, the care used must be commensurate with and proportionate to that danger.

Specific application of that standard requires that the wires carrying electricity must be carefully and properly insulated by those maintaining them at all places where there is a reasonable probability of injury to persons or property therefrom.[6]

■ Thus, the issue is whether CEA breached the standard of care adopted by this court in *Larman* by failing to insulate its power lines over the Texaco gas station. We view this issue as primarily a question of foreseeability. One who maintains electrical wires is not required to insulate those wires at all places. As the language quoted above clearly states, the wires must be insulated only at those places "where there is a reasonable probability of injury to persons or property therefrom." We have adopted the rule that an electric company is liable only for those injuries which are foreseeable.[7]

Did the trial court err in ruling, as a matter of law, that Ferriss' injuries were unforeseeable to CEA? We think not. At the time CEA installed the power lines over the Texaco service station in 1966 they were placed some 20.9 feet above the ground, considerably in excess of the minimum distance required by the Safety Code which was to be adopted by Alaska in 1969, three years later. From 1966 until the time of Ferriss' injuries the wires carried electricity uneventfully, resulting in no injuries and posing no discernible hazard to persons or property. Only four years later, in 1970, when the canopy was erected, was such a hazard created. As we have indicated above, there was no evidence presented at trial from which a reasonable jury could have concluded that

---

6. 514 P.2d at 1279 (footnote omitted), quoting *Polk v. City of Los Angeles,* 159 P.2d 931, 934 (Cal.1945).

7. *Id.*

CEA knew or should have known of the dangerous condition posed by its wires after the erection of the canopy. Thus, the trial court can only be held to have been erroneous in granting the defendant's motion for a directed verdict if we can rule that CEA had a duty to anticipate and foresee that the type of activity which resulted in Ferriss' injuries would occur beneath its lines. More specifically, we would be required to conclude that the construction of a canopy beneath its power lines, and the hazard posed to workers who might construct such a canopy, was foreseeable to CEA. This we decline to do.

In *Larman* the plaintiff was electrocuted when the crane he was operating came too close to a transmission line owned and maintained by Kodiak Electric Association. The trial court held that KEA had not breached any duty owed to the deceased. On appeal, we held that neither several previous incidents, nor KEA's general awareness of the activity in the area would have led KEA to foresee Larman's maneuvering a crane into a 31-foot power line. We believe that *Larman* bears a similarity to this case in that neither the commercial activity which occurred beneath its lines nor the placement of the lines above the gas pumps here would have led CEA to foresee the construction of a 14-foot canopy within a short distance of its wires.

In *Polk v. City of Los Angeles,* 159 P.2d 931 (Cal.1945), from which the standard in *Larman* was adopted, the California Supreme Court held that the trimming of eucalyptus trees, through which the power lines ran, some 45 feet above the ground, was an activity which the defendants should have anticipated.[8] We believe that the *Polk* reasoning is sound, but we also believe that the type of activity present in *Polk* was of a sufficiently different nature so as to demand a different result with respect to Ferriss' injuries here. Our holding that CEA could not foresee the construction of the canopy beneath its lines is consonant with a broad range of decisions of other jurisdictions who have addressed this issue.[9] Thus, we hold that the trial court did not err in granting CEA's motion for a directed verdict. The evidence presented no question of material fact to be resolved by the jury. Neither the two sections of the National Electrical Safety Code cited by the appellant, nor a common law duty owed by CEA, provided a sufficient basis for liability against CEA for Ferriss' injuries to merit the submission of the case to the jury. Accordingly, we affirm the trial court's granting of CEA's motion for a directed verdict.

## DIRECTED VERDICT IN FAVOR OF DEFENDANT TEXACO

■ Ferriss has also appealed the trial court's granting of defendant Texaco's motion for a directed verdict. Having viewed the evidence in its strongest light in favor of the party against whom the motion was made,[10] we believe that the trial court erred in granting the motion.

The contract between Texaco and Rotta, Ferriss' employer, required the construction of a canopy over Texaco's gas pumps

---

8. 159 P.2d at 936.

9. *Manaia v. Potomac Electric Power Company,* 163 F.Supp. 671 (D.Md.1958), *aff'd,* 268 F.2d 793 (4th Cir. 1959), involving contact between a crane and electric wires; *Hiedeman v. Hiedeman,* 290 Minn. 210, 187 N.W.2d 119 (Minn.1971), involving contact between a sheet of corrugated metal and electric lines; *Philway v. City of Kingston,* 246 N.C. 534, 98 S.E.2d 791 (N.C.1957), involving contact between a workman standing on a newly constructed wall and electric lines; *Virginia Electric and Power Co. v.*

*McCleese,* 206 Va. 127, 141 S.E.2d 755 (Va. 1965), involving contact between a $21\frac{1}{2}$ foot pipe and electric wires. *See also Ostrom v. Patchogue Electric Light Company,* 32 A.D. 2d 671, 300 N.Y.S.2d 788 (S.Ct.App.Div. 1969); *Chaney v. Brupbacher,* 242 So.2d 627 (La.App.1970); *Berry v. Atlantic Coast Line R.R.,* 273 F.2d 572 (4th Cir. 1960), *cert. denied,* 362 U.S. 976, 80 S.Ct. 1060, 4 L.Ed.2d 1011.

10. *Bachner v. Rich,* 554 P.2d 430 (Alaska 1976). *See also* cases cited in note 1, *supra.*

which would necessarily require an adequate height for clearance of trucks and other vehicles, thus placing the canopy within the prohibited distance from the power lines.

Section 343 of the Restatement of Torts (Second) provides:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Certainly Texaco was chargeable with knowledge of the presence of the wires running over its gas pumps and of the fact that there was a risk of harm to invitees required by Texaco to construct a canopy within close proximity to the wires. Thus, we conclude that a jury question was presented as to the following issues: (1) whether that risk of harm was unreasonable under the circumstances; (2) whether Texaco failed to exercise reasonable care to protect its invitees, including Ferriss, against the danger; (3) whether Texaco should have expected some of Rotta's employees would not discover or realize the danger and, more particularly, that some of the employees would fail to protect themselves against it.

The presence of wires might alert one to danger, but many wires are not dangerous. A case directly in point is *Stark v. Lehigh*

11. 130 A.2d at 128–129.

12. *See* Comment (f) of Section 343A Restatement of Torts (Second) at p. 220 and

*Foundries,* 388 Pa. 1, 130 A.2d 123 (1957). There the court stated:

The presence of the power lines in and of itself did not indicate obvious danger. Plaintiff was not bound to know the degree of danger involved. 'Wires charged with an electric current may be harmless, or they may be in the highest degree dangerous. The difference in this respect is not apparent to ordinary observation, and the public, therefore, while presumed to know that danger may be present, are not bound to know its degree in any particular case.' *Fitzgerald v. Edison Electric Co.,* 200 Pa. 540, 543 [50 A. 161]; *MacDougall v. Penn [sylvania] Power & Light Co.,* 311 Pa. 387, 392 [166 A. 589]; *Kaufman v. Pittsburg Railways Co.,* 363 Pa. 96, 100 [69 A.2d 90]; *Brillhart v. Edison Light & Power Co.,* 368 Pa. 307, 314 [82 A.2d 44].

\* \* \* \* \* \*

Plaintiff, entering the premises not only for his employer Posh, but in the interest of Lehigh, was entitled to assume that Lehigh had performed its affirmative duty to keep the premises in a reasonably safe condition or warn of dangers thereon which Lehigh knew or should have known existed. Since the danger was not patently obvious plaintiff was not required to make an independent survey to determine whether Lehigh had in fact performed its duty. (citation omitted)[11]

Moreover, Section 343(a)(1) of the Restatement appears directly applicable in stating:

A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.*[12]  (emphasis added)

*Hanson v. Town and Country Shopping Center, Inc.,* 259 Iowa 542, 144 N.W.2d 870, 873–875 (1966).

The judgment in favor of Chugach Electric Association, Inc. is affirmed. The judgment in favor of Texaco is reversed and this matter remanded to the superior court for trial.