**James W. FERRISS, Appellant,**

v.

**TEXACO, INC., a corporation, Appellee.**

**No. 3774.**

Supreme Court of Alaska.

Sept. 7, 1979.

---

James K. Tallman, Anchorage, for appellant.

Marcus R. Clapp and Doris R. Ehrens, of Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellee.

## OPINION

Before RABINOWITZ, C. J., CONNOR, BOOCHEVER and MATTHEWS, JJ., and DIMOND, Senior Justice.

DIMOND, Senior Justice.

James Ferriss, an employee of Rotta Sheet Metal Works, was working on the installation of metal canopies above gasoline pumps at a Texaco service station. While standing on top of a 14-foot 3-inch canopy, Ferriss suffered injuries from electrical shock when a piece of angle iron he was holding came into contact with a high-voltage power line. Ferriss brought an action for damages against the owner of the power line, Chugach Electric Association, Inc., and also against Texaco. The superior court, at the close of all of the evidence, directed verdicts in favor of both Chugach and Texaco, and entered judgment accordingly.

On appeal, we affirmed the judgment in favor of Chugach and reversed the judgment in favor of Texaco. *Ferriss v. Chugach Electric Association, Inc.,* 557 P.2d 763 (Alaska 1976). We held that Texaco was chargeable with knowledge of the presence of electrical wires running over its gasoline pumps and of the fact that there "was a risk of harm to invitees required by Texaco to construct a canopy within close proximity to the wires." We concluded that a jury

question was presented as to the following issues:

(1) whether that risk of harm was unreasonable under the circumstances;

(2) whether Texaco failed to exercise reasonable care to protect its invitees, including Ferriss, against the danger;

(3) whether Texaco should have expected some of Rotta's employees would not discover or realize the danger and, more particularly, some of the employees would fail to protect themselves against it.

We remanded the case to the superior court for a new trial as to Texaco.[1] At the conclusion of the trial, the jury returned a verdict in favor of Texaco. Ferriss has again appealed, asserting as error several points which he claims would require yet another trial.

## I. *The National Electrical Safety Code*

The National Electrical Safety Code was adopted by the Alaska legislature in 1969 as AS 18.60.580. Section 234C(4)(a)(1) of the Code, Table IV, provides:

Clearance of Supply Conductors From Buildings

| Voltage of Supply Conductors | Horizontal Clearance | Vertical Clearance |
|---|---|---|
| 300 to 8,700 | 3 | 8 |
| 8,700 to 15,000 | 8 | 8 |
| 15,000 to 50,000 | 10 | 10 |
| Exceeding 50,000 | 10 plus 0.4 inch per kv in excess | 10 plus 0.4 inch per kv in excess |

The electrical conductor which Ferriss hit with the angle iron carried 7,200 volts of electricity. For a conductor carrying that amount of power, the Code requires a vertical clearance of eight feet from buildings. The day before Ferriss was injured, the canopy at Texaco's station had been constructed to a height which rendered the distance from the top of the canopy to the wire less than eight feet, which was in violation of the code. Ferriss attempted to have the above-quoted section of the Code admitted into evidence. The court denied his request and Ferriss asserts this ruling as error.

Texaco argues that the court's decision was correct since the Code's standards apply only to those who install or alter electrical wiring. In support of this argument, Texaco refers to AS 18.60.640, which provides that sections 580–660 of "this chapter" (Chapter 60) "cover only new installations and alterations to existing installations." Texaco also refers to AS 18.60.-650, which provides for penalties to be assessed against a person "who installs electrical wiring not in compliance with the minimum electrical standards as set out in § 580 of this chapter."

Texaco's argument is not convincing. The provisions of the National Electrical Safety Code requiring that supply conductors carrying 7,200 volts of electricity have a minimum vertical clearance of eight feet from buildings is not directed solely at those electrical utilities that install high-voltage lines. The purpose of the Code is safety of persons who might be injured by electricity. It is just as unsafe for one to construct a building with less than an eight-foot vertical clearance from the high-voltage conductors previously installed, as it is to place a 7,200-volt supply conductor within the same vertical distance from existing buildings.

What we have said is borne out by another section of Chapter 60—the same chapter which adopts the National Electrical Safety Code. Section 670 of Chapter 60 (AS 18.60.-670) provides in relevant part:

[N]o person . . . may

.    .    .    .    .

(2) . . . erect [or] maintain . . buildings or other structures within 10 feet of a high voltage overhead electrical line or conductor.

What this means, in effect, is that the legislature has adopted for safety purposes a minimum vertical clearance of ten feet between supply conductors and buildings, regardless of voltage. The National Electrical Safety Code is therefore applicable to Texaco because Texaco erected a building within the prohibited distance of a high-

1. *Ferriss v. Chugach Electric Ass'n, Inc.,* 557 P.2d 763, 769 (Alaska 1976).

voltage electrical line. In addition, the relevancy to Texaco of the Code should be apparent from our decision on the first appeal by Ferriss. There we referred to Texaco "placing the canopy within the prohibited distance from the power lines," and moreover, we stated that "Texaco was chargeable with knowledge of the presence of the wires running over its gas pumps and of the fact that there was a risk of harm to invitees required by Texaco to construct a canopy within close proximity to the wires." *Ferriss v. Chugach Electric Association, Inc.,* 557 P.2d 763, 769 (Alaska 1976).

■ The trial court erred in refusing to allow evidence of the National Electrical Safety Code to be presented to the jury. However, we believe the error was harmless. James Watson, a former electrical safety inspector for the State of Alaska, and a man with vast experience in the electrical industry, testified on behalf of Ferriss. He stated, in response to a question by Ferriss's attorney, that in the electrical industry the recognized safe minimum distance from the top of a structure to overhead, energized and uninsulated power lines carrying 7,200 volts of electricity is eight feet. Watson also stated that the top of the canopy where Ferriss was working, because of its close proximity to an overhead 7,200-volt conductor, was an unsafe place to work and was a great danger to Ferriss. Thus, Ferriss was able to get before the jury substantially the same evidence that would have been presented had the relevant portion of the National Electrical Safety Code been admitted in evidence. In final argument, Texaco's counsel accepted eight feet as the appropriate minimum distance and therefore it cannot be said that admission of the Code would have aided in resolving a disputed issue.

Ferriss contends that the trial court also erred in refusing to instruct the jury that violation of the Code constituted negligence per se. He relies upon our decision in *Ferrell v. Baxter,* 484 P.2d 250 (Alaska 1971). In that case we held that violation of an applicable traffic statute or regulation, which has been adopted by the court as a standard of reasonable behavior, is not merely evidence of negligence but consti-

tutes negligence in itself. *Ferrell v. Baxter,* 484 P.2d 250, 257–58 (Alaska 1971). We said that before a plaintiff is entitled to a negligence per se instruction, he must first demonstrate that he is among the class which the regulation or law was designed to protect, and furthermore, that the injury he suffered was caused by a harm against which the law or regulation was designed to protect. *Ferrell v. Baxter, supra* at 261.

■ The question of whether a regulation or law is to be adopted as the applicable standard of care is for the trial court to decide. *Ferrell v. Baxter, supra* at 264; Restatement (Second) Torts § 286 (1965). In *Ferrell* we dealt with driving regulations with which it could be assumed that all drivers should be familiar. The trial judge, therefore, did not err in adopting those regulations as standards of reasonable behavior. In contrast, there is some basis for confusion as to the applicability of the National Electrical Safety Code to other than new electrical installations or alterations of existing installations. As applied to landowners, the specific distances allowable from lines of varying voltages are not within general knowledge in the same manner as driving regulations. Given the relative obscurity of the Code's applicability in the circumstances of this case, we hold that the trial court did not err in failing to instruct the jury that violation of the Code constituted negligence per se.

II. *Plaintiff's Proposed Instruction*

Plaintiff's proposed Instruction No. 33 states:

Texaco was chargeable with knowledge of the presence of the wires running over its gas pumps and of the fact that there was a risk of harm to invitees required by Texaco to construct a canopy within close proximity to the wires.

Ferriss claims that the trial court's refusal to give this instruction to the jury constituted error.

The wording of the proposed instruction was a portion of a verbatim statement we made in *Ferriss v. Chugach Electric Association, Inc.,* 557 P.2d 763, 769 (Alaska 1976). It prefaced our conclusion that a jury ques-

tion did exist as to certain issues. In starting our discussion of the granting of the directed verdict in *Texaco* in the first trial, we stated:

> Having viewed the evidence in its strongest light in favor of the party against whom the motion was made, we believe that the trial court erred in granting that motion.

Instructions quoting from language in an opinion, particularly under such circumstances, may often be misleading.[2] In *Davis v. Hearst*, 160 Cal. 143, 116 P. 530, 553 (1911), the court discussed the reasons for not invariably approving the use of language in appellate opinions as jury instructions, stating:

> This is necessarily so, for it is always proper and frequently imperative upon a court of review, in answering arguments pro and con, itself to indulge in argumentative discussion, which is appropriate to the question under consideration, but has no place in an instruction to a jury.

█ The court did give an adequate instruction regarding the potential liability of Texaco as a landowner. The instruction was based on section 343 of the Restatement (Second) Torts, also quoted in our opinion on the first appeal in this case, 557 P.2d at 769, dealing with the liability of a possessor of land to an invitee:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Since it was clear that Ferriss was an invitee, the instruction adequately protected his right.[3] The court did not err in refusing to give Ferriss's proposed instruction to the jury.

### III. *Other Alleged Errors*

Ferriss asserts error in the admission of a video deposition taken of Dr. Hood which concerned Ferriss's medical condition. Ferriss claims that Dr. Hood's testimony was extremely damaging to him, and left his counsel without opportunity for cross-examination.

There is no merit to this assertion of error. Ferriss's counsel admitted at trial that there was cross-examination of Dr. Hood at the time his deposition was taken, and Civil Rule 32(a)(3)(F) specifically provides that "the deposition of a witness whether or not a party, may be used by any party for any purpose if the court finds: . . . that the witness' testimony has been recorded on video tape."

The trial court, over a hearsay objection by Ferriss, permitted Texaco's witness, Joseph Enriquez, to testify as to a conversation he allegedly overheard in which a coworker warned Ferriss about the power lines. Enriquez testified as follows:

> Mr. Snyder told Mr. Ferriss, the welder that first of all to watch out for those power lines on top of the canopy. He say, because that's a pretty high power line, . . ..

Ferriss denied receiving the warning.

█ Hearsay is evidence of a statement made other than by a witness while testifying at a hearing which is offered to prove the truth of the matter asserted.

---

**2.** *People v. Adams*, 76 Cal.App. 188, 244 P. 114 (1926).

**3.** We note, however, that subsequent to our first *Ferriss* opinion we abolished the distinctions between the status of persons as trespassers, licensees or invitees as controlling factors in determining scope of duty. Future instructions should be based on the rule we authorized

in *Webb v. City & Borough of Sitka*, 561 P.2d 731, 733 (Alaska 1977) (footnote omitted):

> A landowner or owner of other property must act as a reasonable person in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden on the respective parties of avoiding the risk.

*Meyst v. East Fifth Avenue Service, Inc.,* 401 P.2d 430, 437 n.5 (Alaska 1965). But the hearsay rule does not exclude all evidence of out-of-court statements. In *Watson v. State,* 387 P.2d 289, 293 (Alaska 1963) (footnote omitted), we said:

> Evidence of a statement made other than by a witness who is testifying is excluded as hearsay only when it is offered to establish the truth of the fact stated. Where it is offered without reference to its truth, but for some other relevant purpose, then the hearsay rule does not apply.

Here, the statement of Enriquez was not offered to prove the fact that the power lines were dangerous, but rather for the relevant purpose of showing that Ferriss was warned of the danger. This fact has independent legal significance, independent of the truth of the statement that Enriguez made. There was no violation of the hearsay rule.[4]

We have examined the remaining points referred to in Ferriss's brief and find no errors. Our summary disposal of these matters is indicated by Ferriss's failure to provide a "concise statement of points on which he intends to rely," in compliance with Appellate Rule 9(e),[5] or because of his failure to do more than give cursory treatment to these questions in his brief.[6]

The judgment is AFFIRMED.

BURKE, J., not participating.

---

**4.** *Pingatore v. Montgomery Ward & Co.,* 419 F.2d 1138, 1142 (6th Cir. 1969), *cert. denied,* 398 U.S. 928, 90 S.Ct. 1818, 26 L.Ed.2d 90 (1970) (testimony about plaintiff's out-of-court statements concerning rat bite competent "on the question of notice of time and place of accident"); *Hatzakorzian v. Rucker-Fuller Desk Co.,* 197 Cal. 82, 239 P. 709, 716 (1925) (testimony about defendant's out-of-court statement concerning dangerous road admissible "because it tended to disclose that the deceased had in his mind and fully realized . . . the perils or dangers"); *Northern Trust Co. v. Moscatelli,* 54 Ill.App.2d 316, 203 N.E.2d 447, 455 (1964) (letters not hearsay when introduced to show recipient had notice of information contained in the letters); *Crespin v. Albuquerque Gas & Electric Co.,* 39 N.M. 473, 50 P.2d 259, 262 (1935) (testimony of co-worker that he told plaintiff the current in the wire was

---

off was admissible to show plaintiff did not know of the danger in picking up the wire).

**5.** Appellate Rule 9(e) provides:

> *Statement of Points.* At the time of filing his notice of appeal, the appellant shall serve and file with his designation a concise statement of the points on which he intends to rely on the appeal. The court will consider nothing but the points so stated. On motion, and for cause, the statement of points may be supplemented subsequent to the filing of the designation of record.

*See Alaska Board of Fish and Game v. Loesche,* 537 P.2d 1122, 1127 (Alaska 1975) (point not considered because not included in statement of points on appeal).

**6.** *Euwer v. City of Palmer,* 572 P.2d 436, 437–38 (Alaska 1977).