Michael WASSILIE, Appellant,

v.

ALASKA VILLAGE ELECTRIC
COOPERATIVE, INC.,
Appellee.

No. S–3932.

Supreme Court of Alaska.

Aug. 9, 1991.

---

Jeffrey M. Feldman, Gilmore & Feldman, Anchorage, and Myron E. Angstman, Law Offices, Myron E. Angstman, Bethel, for appellant.

Burton C. Biss, Biss and Holmes, Wasilla, for appellee.

## OPINION

Before RABINOWITZ, C.J., MATTHEWS, COMPTON and MOORE, JJ.

MOORE, Justice.

Michael Wassilie appeals a judgment notwithstanding the verdict in a negligence action brought against Alaska Village Electric Cooperative, Inc. (AVEC). Wassilie received injuries from a severe electrical shock incurred when his citizens' band (CB) antenna toppled near AVEC's newly installed overhead electrical transmission wire system in the village of Eek. The trial court issued a partial summary judgment, finding as a matter of law that Wassilie had been comparatively negligent for failing to ground his CB radio and CB antenna; this decision was not appealed. At trial, the jury found in favor of Wassilie in a special verdict but allocated 40% of the negligence to Wassilie and 60% to AVEC.

AVEC moved for judgment notwithstanding the verdict, or alternatively, a new trial, or alternatively, remittitur. The superior court granted judgment n.o.v., ruling that the possibility that Wassilie's CB antenna would fall near the overhead lines was unforeseeable and therefore, AVEC did not have a duty to specifically warn Wassilie of the possibility that electricity from the lines could be conducted by his antenna and furthermore, even if such a duty existed, Wassilie failed to demonstrate that additional warnings would have changed his behavior. The court did not decide the motion for a new trial or remittitur. Although there is considerable evidence to the contrary, we are nonetheless persuaded that the jury could reasonably have concluded that the overhead lines created a risk of foreseeable harm to Wassilie. We therefore reverse the grant of judgment n.o.v. and remand for consideration of the motions for a new trial and remittitur.[1]

## I. BACKGROUND

At the request of the Eek village council, AVEC installed an overhead electrical power system in Eek. Previously, the village had been served by a ground-level system of insulated wires enclosed in wooden utiladors. AVEC began construction of the overhead system in November 1984. Construction was completed in late March or early April 1985, and the system energized some three to four months later.

Michael Wassilie's CB antenna was mounted on a forty foot wooden mast which was located about eighteen feet from AVEC's power lines. Contrary to explicit directions provided with the antenna and CB unit, neither the antenna nor the CB

---

**1.** We note that the trial court erred in failing to rule on the motion for a new trial or remittitur simultaneously with its grant of judgment n.o.v.

Alaska Rule of Civil Procedure 50(c)(1) requires the court to rule on a motion for a new trial when it grants a motion for judgment n.o.v.

unit was grounded. The antenna was originally in an upright position, but sometime between February 1984 and the time construction began in November 1984, it blew over and was leaned at a forty-five degree angle against Wassilie's house.

According to Wassilie, the antenna was righted to a vertical position during the period between completion of construction and the energizing of the system. AVEC disputed the timing, contending that the antenna was placed in a vertical position *after* the system was energized.[2] The parties also disagreed as to whether the antenna was relocated when it was placed upright. Wassilie maintains that the antenna was merely righted and its base not moved.

On October 9, 1985, Eek experienced a storm with winds estimated at fifty miles per hour. Unbeknownst to Wassilie, his CB antenna blew over from its vertical position and landed dangerously close to AVEC's overhead transmission lines. The proximity of the antenna to the wires permitted electricity to arc to the antenna through which it was conducted to the CB unit. When Wassilie attempted to pick up the CB, he received a severe shock and was knocked to the floor unconscious. His daughter ran to their neighbor Charles Allen's home for assistance. Allen came to Wassilie's home and was also mildly shocked when he went to pick up the CB unit from the floor where Wassilie had dropped it. Allen then went outside the home and saw the antenna leaning toward the wires with electricity arcing between it and the wires. Allen contacted the village power plant operator who shut down the power system; Allen then moved the antenna away from the wires and secured it to Wassilie's house with a rope.

Wassilie was airlifted to a hospital in Bethel and ultimately to Anchorage where he was hospitalized from October 9 through 23. Wassilie suffered third degree burns on his forearm, palm, and chest. He was unable to resume normal activities for the remainder of the winter.[3]

At trial, Wassilie's expert witness, John Talbott, testified that AVEC could have prevented the accident had it: (1) moved the power lines horizontally three feet further away, out of the antenna's fall zone; (2) raised the conductors four feet in height; or (3) insulated the conductors for "15 feet centered on the nearest point to the antenna." AVEC's expert testified as to the impracticality of insulating the line, stating that the greater weight would have required additional support poles. He also established that the antenna's proximity to the power line did not violate the National Electrical Safety Code.[4]

In the memorandum decision granting judgment n.o.v., the trial court, focusing on the issue of foreseeability, found that AVEC did not have a duty to specifically warn Wassilie of the danger posed by the uninsulated lines adjacent to his home because it could not have foreseen that Wassilie would create the dangerous condition by moving the antenna closer to the overhead lines. Furthermore, the court found Wassilie had received generalized warnings about the danger of the overhead power lines and CB antennas but ignored these warnings. Therefore, the court concluded that even assuming that AVEC did have a duty to warn, Wassilie could not demonstrate that his actions would have been different if he had received an adequate warning and thus had failed to establish that breaching this duty was the proximate cause of his injuries. For these reasons, the trial court overturned the jury verdict and granted judgment for AVEC.

## II. STANDARD OF REVIEW

"[T]he proper role of this court, on review of motions ... for judgment notwithstanding the verdict, is not to weigh con-

---

**2.** AVEC interprets Wassilie's closing statement at trial as conceding that Wassilie placed the antenna in a vertical position after the system was energized. However, the closing statement is ambiguous on this point.

**3.** Wassilie has permanent scarring on his chest and right hand and the scarred areas are sensitive to cold; he also experiences shortness of breath and periods of tiredness.

**4.** National Electric Safety Code standards are incorporated into Alaska law. AS 18.60.580.

flicting evidence or judge of the credibility of the witnesses, but ... rather to determine whether the evidence, when viewed in the light most favorable to the nonmoving party, is such that reasonable men could not differ in their judgment." *Holiday Inns of America, Inc. v. Peck*, 520 P.2d 87, 92 (Alaska 1974) (footnote omitted).

In reviewing judgments n.o.v. in negligence cases, this court has focused on whether, in the exercise of reasonable judgment, there was room for diversity of opinion among fair minded persons. *Nat'l Bank of Alaska v. McHugh*, 416 P.2d 239, 242 (Alaska 1966); *McCoy v. Alaska Brick Co.*, 389 P.2d 1009, 1010 (Alaska 1964); *Snipes v. March*, 378 P.2d 827, 828–29 (Alaska 1963).

## III. FORESEEABILITY

■ The trial court reasoned that AVEC could not have foreseen that Wassilie would move his antenna from a safe position against the house and "place it ... ungrounded and improperly moored" in a position close to the lines. It therefore held that AVEC was not liable for Wassilie's injuries because an electric company is not liable for accidents involving activities which were unforeseeable at the time electric lines were installed. *See, e.g., Ferriss v. Chugach Elec Ass'n, Inc.*, 557 P.2d 763, 767 (Alaska 1976) (a power company was not responsible for electrical injury incurred during construction to place a metal canopy within six feet of an existing power line, because such construction was not foreseeable); *Larman v. Kodiak Elec. Ass'n*, 514 P.2d 1275, 1280 (Alaska 1973) (a construction worker maneuvering a crane into a wire located off the road and thirty-one feet in the air was not foreseeable).

The court's conclusion is implicitly based on the following premises: (1) the antenna was a safe distance from the overhead wires when it was leaning over the house; (2) the antenna was relocated and placed closer to the wires when it was raised to a vertical position; and (3) the antenna was not placed in a vertical position until after AVEC finished construction of the overhead transmission lines.[5] Wassilie maintains that all three of the trial court's premises underlying the judgment n.o.v. are mistaken. Although there is evidence to support the trial court's determinations, we find that Wassilie did present conflicting evidence.

First, there was evidence presented that, even leaning against the house, the antenna posed a risk of contact with the transmission line. Wassilie's expert testified that an AVEC photograph showed that even leaning over, the antenna was above the conductors of the electric power line so that if it fell it would contact the wires. Next, although the evidence indicates that the base of the antenna probably was moved when it was righted, Wassilie testified that the antenna remained the same distance from the lines. Finally, there is some evidence which indicates that the antenna was upright for some period of time after the overhead system was completed but before it was energized. The system was energized in approximately June or July 1985, and Wassilie's neighbor testified that he helped one of Wassilie's sons right the antenna in the spring of 1985.

Based on this evidence, the jury may have concluded that the dangerous condition was present *before* the power lines were installed or energized.[6] Assuming that the risk posed by electrical lines was present prior to the time the lines were energized, Wassilie's situation is distinguishable from the circumstances in *Larman* and *Ferriss*, and the jury could have reasonably concluded that AVEC should

---

**5.** There is no question that AVEC knew or had reason to know of the presence of Wassilie's CB antenna. During the construction of the transmission line, AVEC's lineman spent approximately half an hour atop a pole behind Wassilie's home, giving him opportunity to observe the leaning antenna. Additionally, the lineman inspected each home for grounding prior to the energizing of the system; Wassilie's house was included in this inspection.

**6.** Moreover, it is possible that the jury applied its knowledge of local conditions to conclude that an accident was foreseeable. Overhead wires were new to the village, and CB antennas common. Conditions such as permafrost and wind render antennas unstable.

have been aware of the existence of the danger before the accident took place.[7] While we recognize that the evidence in the record is conflicting, there is evidence to support the jury's decision that the harm to Wassilie was sufficiently foreseeable to create a duty to warn. We must therefore consider whether the trial court correctly concluded that Wassilie failed to adequately demonstrate that the warnings he re-. ceived were insufficient, and that additional warnings would have caused him to change his behavior.

## IV. FAILURE TO WARN

The superior court noted that Wassilie had received warnings from "AVEC, friends, the CB package, and the antenna instructions, among other sources." However, the record shows that the jury may have concluded that none of these sources gave Wassilie a clear indication of the extent of the risk.

An AVEC newsletter, Light Lines, warned of the dangers of overhead lines, and one issue pointed out that CB antennas should not touch the lines.[8] However, Wassilie, his wife, Marie Wassilie, and a neighbor testified that they read Light Lines only intermittently. Wassilie's wife also testified that her husband has "below average" reading skills and rarely reads.[9] AVEC claimed that Charles Allen, Wassilie's neighbor, warned him about the danger of the overhead lines. However, the record indicates that Allen told Wassilie not to let the children fly their kites near the wires, but did not warn him about the antenna. Although the village public safety officer testified that he made one announcement over the local CB station that CB antennas close to the overhead wires should be moved, there is no evidence that

Wassilie heard this warning. The CB package and antenna instructions contained warnings regarding grounding and placement near power lines. However, Wassilie explained that he read the instructions years earlier when he first assembled the CB antenna; at that time he lived in an area with no overhead power lines, so he disregarded the warning.

These warnings at most provided a generalized warning about the danger of high voltage lines; Wassilie was not specifically warned about the particular danger of his situation. He admits that he knew that electricity is dangerous and metal conducts electricity, but claims that he did not appreciate the danger of electricity *arcing* between power lines and an antenna. Thus, while Wassilie may have had "knowledge" of the risk, he lacked an "appreciation" of the danger. *See* Keeton, *Prosser and Keeton on Torts*, § 68 at 487–89 (5th ed. 1984).

Given our conclusion that the risk posed by the proximity of the antenna to the overhead lines was foreseeable, we find that reasonable jurors could have concluded that AVEC negligently failed to provide explicit warnings. Since Wassilie testified that after the accident he had the antenna moved to a safer location and would have done so sooner had he known of the risk, we also find that the jurors could reasonably have found that the failure to provide adequate warning was the proximate cause of Wassilie's injury.[10]

## V. CONCLUSION

In reviewing the facts presented in the record we find that there was room for diversity of opinion among fair minded persons. Therefore, we REVERSE the judgment notwithstanding the verdict and REMAND this case to the superior court for a

---

7. AVEC's lineman admitted at trial that under the National Electric Safety Code, transmission line installers have a duty to check for anything that would present a "probable risk."

8. This newsletter was sent to all AVEC customers and contained general information; there was no specific mailing to Eek introducing the overhead system or issuing special cautionary instructions.

9. Wassilie has a fifth grade education and his first language is Yu'pik.

10. Wassilie argues that he presented the jury two alternative theories of negligence in addition to the failure to warn. As we have found that a reasonable jury could have found negligence on a failure to warn theory, we need not address the merits of Wassilie's alternative theories.

ruling on the motion for a new trial and the motion for remittitur.